**Leighton EMPEY, Plaintiff–Appellee,**

v.

**GRAND TRUNK WESTERN RAILROAD CO., Defendant–Appellant.**

No. 87–1324.

United States Court of Appeals, Sixth Circuit.

Argued March 21, 1988.

Decided March 9, 1989.

Richard A. Dietz (argued), Foster, Meadows & Ballard, P.C., Detroit, Mich., for defendant-appellant.

James A. Brescoll (argued), Dennis P. Brescoll, Brescoll & Associates, Mt. Clemens, Mich., for plaintiff-appellee.

Before JONES, MILBURN and BOGGS, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Defendant-appellant, Grand Trunk Western Railroad Co., appeals the jury verdict for the plaintiff, Leighton Empey, in this personal injury action brought pursuant to the Federal Employer's Liability Act (FELA), 45 U.S.C. §§ 51–60 (1982). For the reasons which follow, we affirm.

### I.

On September 8, 1983, Empey, an employee of Grand Trunk Western Railroad Co. (Grand Trunk), was staying at the Downtown Motor Lodge (DML) in Port Huron, Michigan. A Grand Trunk company vehicle had transported Empey and other Grand Trunk employees to the DML before their next work assignment because the Federal Hours of Service Act, 45 U.S.C. § 62 (1982), provides that railroad employees can only work twelve consecutive hours before they are required to rest for ten hours. Because this statute also requires that railroad employers provide rooms for their off duty train crew, Grand Trunk had a contract with the DML to board its employees who were on layover in Port Huron. While Empey was not required to stay at the DML, if he chose to stay at another facility, it would have been at his own expense.

Empey claims that when he stepped out of the shower in his room at the DML, he slipped on water which had accumulated on the tile floor, fell backwards and injured his back. Evidence presented at the trial indicated that a faulty latch on the shower door allowed water to escape the shower stall and accumulate on the floor. While Empey reported this injury to the DML and allegedly reported this injury to Grand Trunk, he nevertheless returned to work that night.

One week later, on September 15, 1983, Empey was working as a brakeman where he performed switching operations at the Richmond Co-op. While walking along a line of railroad cars to check the hand brakes, Empey claims that he stepped into a hole which was covered from view by high, untrimmed weeds. He claims that this fall exacerbated the back injury which he sustained at the DML.

A jury trial began on August 18, 1986 and continued through September 5, 1986. At the conclusion of Empey's and Grand Trunk's proofs, Grand Trunk made a motion for a directed verdict on the issue of the scope of Empey's employment and on the issue of imputation of negligence. In response to Grand Trunk's motion for a directed verdict, the district court ruled that Empey was within the scope of his employment with Grand Trunk when he fell at the DML and that any negligence of the DML and the Richmond Co-op could be imputed to Grand Trunk pursuant to the FELA. At the conclusion of the trial, Grand Trunk submitted a recommended jury form which included sixteen questions, with multiple questions on each of the September 8 and 15, 1983 incidents and on the negligent assignment theory. The district court rejected the form based on its belief that the questions would confuse the jury. Instead, the court submitted a six-question jury form. On appeal, Grand Trunk challenges both of those rulings and challenges the district court's refusal to submit separate questions to the jury on Empey's claims relating to the two separate incidents.

### II.

Grand Trunk contends that the district court erred in holding that, as a matter of law, Empey was within the scope of his employment when injured at the DML. We review a district court's legal conclusions *de novo*. *Loudermill v. Cleveland Bd. of Educ.*, 844 F.2d 304, 308 (6th

Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 377, 102 L.Ed.2d 365 (1988).

Grand Trunk asserts that since Empey was not required to work during the time he was at the DML and since he was not required to stay at the DML, he was not injured within the scope of his employment. Grand Trunk relies on a line of cases which hold that employees who are injured while commuting to or from work cannot sue under the FELA because they are not within the scope of their employment. *See, e.g., Getty v. Boston and Maine Corporation,* 505 F.2d 1226 (1st Cir.1974); *Metropolitan Coal Company v. Johnson,* 265 F.2d 173 (1st Cir.1959); *Sassaman v. Pennsylvania R. Co.,* 144 F.2d 950 (3rd Cir.1944). Because Empey was not commuting to or from work at the time he sustained his back injuries and because this Circuit has held that the "FELA's liberal purpose must be kept in mind when confronting arguments that would restrict an employer's liability under the Act," we decline to apply the holdings of these commuter cases to the instant case. *Baker v. Baltimore & Ohio Railroad Company,* 502 F.2d 638, 641 (6th Cir.1974).

Although this court has not addressed whether railroad workers who are injured while using accommodations provided by their employers are acting within the scope of their employment, this issue has been addressed by the Second and Third Circuit Courts of Appeals. The plaintiff in *Mostyn v. Delaware, L. & W.R. Co.,* 160 F.2d 15 (2nd Cir.), *cert. denied,* 332 U.S. 770, 68 S.Ct. 82, 92 L.Ed. 355 (1947), was employed by the railroad as a casual worker. During the time Mostyn worked for the railroad, an independent contractor was responsible for housing and feeding the employees. Because of the verminous conditions of the housing accommodations, one night Mostyn chose to sleep outside, near railroad tracks, where he was struck by a passing train. The railroad alleged that Mostyn was not injured within the scope of his employment because the employees were not required to stay at the "bunk cars" provided by the contractor. The Second Circuit rejected that argument and instead held that

when a railroad provides shelter or food or both for its employees, and they are using the accommodations so provided to prepare themselves for their work, or to rest and recuperate, they must be regarded as in its "employ."

160 F.2d at 17–18. Similarly, the railroad company in *Carney v. Pittsburgh & Lake Erie Railroad Company,* 316 F.2d 277 (3rd Cir.), *cert. denied,* 375 U.S. 814, 84 S.Ct. 45, 11 L.Ed.2d 49 (1963), arranged for its employees to stay at the local Young Men's Christian Association (YMCA), but did not *require* the employees to use these facilities. Carney fell from a negligently maintained bed which was provided by the YMCA. The Third Circuit, following *Mostyn,* concluded that since the railroad company "provided Carney with shelter and food, which by custom and the economic realities of the situation he and his work group were encouraged to use," he was injured within the scope of his employment. 316 F.2d at 279.

The instant action is factually similar to *Mostyn* and *Carney.* Grand Trunk provided housing for its employees so they could recuperate and be prepared for their next assignment. In addition, while the employees could have stayed at another hotel, Grand Trunk would not have reimbursed them for their housing expenses. Since Grand Trunk implicitly required Empey to stay at the DML, we agree with the district court's conclusion that

It would violate the notions of fair play for the railroad to encourage its employees to lodge at a particular establishment and then escape liability for injuries suffered by its workers as a result of the poor quality of the facilities it encouraged them to use.

J.App. at 284. Accordingly, we join the Second and Third Circuits in holding that an employee who is injured while he avails himself of housing which his employer has provided and implicitly encouraged him to use is within the scope of his employment for the purposes of the FELA. *See also Moore v. Chesapeake & O. Ry. Co.,* 649 F.2d 1004 (4th Cir.1981) (Although the plaintiff was not compelled to eat in the cafeteria provided by her employer, the

injuries which she sustained in the cafeteria were in the course of her employment for the purposes of the FELA.) Thus, we affirm the district court's ruling that Empey was within the scope of his employment when he was injured at the DML.

### III.

■ Grand Trunk's second argument is that the district court erred in imputing the DML's and Richmond Co-op's negligence to it. The district court, relying on this court's decision in *Payne v. Baltimore and Ohio Railroad Company*, 309 F.2d 546 (6th Cir.1962), *cert. denied*, 374 U.S. 827, 83 S.Ct. 1865, 10 L.Ed.2d 1051 (1963), found that the negligence of the DML and Richmond Co-op were imputed to Grand Trunk as an extension of Grand Trunk's non-delegable duty to provide Empey with a safe place to work. Grand Trunk contends that *Payne* was incorrectly decided and urges this court to reverse the case and hold that the DML and Richmond Co-op were not Grand Trunk's "agents" for purposes of the FELA.

In *Sinkler v. Missouri Pacific R. Co.*, 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958), a railroad employee was injured when the car in which he was riding collided with another railroad car in the station. The Court held that, although the employee's injury resulted from the fault of a switching crew employed by an outside company, the switching crew's negligence was properly imputed to the railroad. Specifically, the Court held that

> when a railroad employee's injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer, such others are "agents" of the employer within the meaning of ... FELA.

356 U.S. at 332, 78 S.Ct. at 763.

The Supreme Court reexamined the *Sinkler* agency doctrine in *Ward v. Atlantic Coast Line R. Co.*, 362 U.S. 396, 80 S.Ct. 789, 4 L.Ed.2d 820 (1960). The employee in that case was injured while working for a customer of his railroad company employer. The customer had an agreement with the railroad company which provided that the company would periodically inspect the railroad tracks which ran from the railroad's main line tracks to the customer's plant. If the customer felt that the tracks needed repair, members of the railroad company crew would be offered the opportunity to repair the tracks. The Supreme Court found that the employee was working for the customer during his time off from the railroad, and that the customer was not engaged in "operational activities" of the railroad, as defined in *Sinkler*. The Court therefore held that the negligence of the customer could not be imputed to the railroad. *Id.* at 397, 80 S.Ct. at 790.

In *Shenker v. Baltimore & Ohio R. Co.*, 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963), the Supreme Court examined a different rationale for imputing a third-party's negligence to a railroad company under the FELA. The employee in that case was injured while loading mail into a railroad car owned by another railroad company. The railroad car was located in a station which was managed and operated by the plaintiff's employer. The Court held that the employer had a duty to inspect the other railroad's cars before permitting its employees to work with them. In so holding, the Court approved of "the more broad proposition" that a railroad has a non-delegable duty "to provide its employees with a safe place to work even when they are required to go onto the premises of a third party over which the railroad has no control." *Id.* at 7, 83 S.Ct. at 1671.

This court decided *Payne* before the Supreme Court announced its decision in *Shenker*. The plaintiff in *Payne* was killed when the boxcar upon which he was riding derailed from the railroad track and collided with the wall of a factory building. The car derailed because of a large accumulation of ashes which had been placed on the track by its owner. The *Payne* court declined to impute negligence to the railroad company based on the *Sinkler* agency doctrine, but instead stated that

> A railroad has the non-delegable duty to provide an employee with a safe place to work. This is so despite the fact that it

may not own, control or be under a primary obligation to maintain the premises on which the employee is injured. A railroad is not relieved from liability because such premises are unsafe or because of the existence of an unsafe condition brought about through the act of another and without fault, on the railroad's part.

309 F.2d at 549 (citations omitted). Thus, although this case was decided before the Supreme Court's decision in *Shenker* was announced, the holding of *Payne* is consistent with *Shenker*.

In the instant action, Grand Trunk contends that it should not be held liable for the DML's or Richmond Co-op's negligently maintained premises because the unsafe conditions occurred without any fault on its part. Because *Payne* controls this case and because *Payne*'s holding is consistent with the Supreme Court's rulings in *Sinkler, Ward* and *Shenker,* we accordingly hold that the district court properly imputed the negligence of the DML and Richmond Co-op to Grand Trunk.

### IV.

■ Grand Trunk's final argument is that the district court erred in refusing to submit separate questions to the jury on the separate incidents and claims alleged in Empey's complaint. In examining jury instructions, "the critical inquiry is whether the instructions as a whole provide the jury with sufficient guidance concerning the issues to be tried." *Teal v. E.I. DuPont De Nemours and Co.,* 728 F.2d 799, 802 (6th Cir.1984). Applying this standard, we find that the instructions as a whole were sufficient and that the district court therefore did not abuse its discretion in refusing to submit Grand Trunk's sixteen-question special jury interrogatory form.

### V.

Because we find all of the defendant's arguments to be without merit, we hereby AFFIRM the district court's judgment.