**CONSOLIDATED RAIL CORPORATION,**
Plaintiff,

v.

**FORD MOTOR COMPANY, a foreign corporation, Defendant.**

No. 89–CV–73294–DT.

United States District Court,
E.D. Michigan, S.D.

Oct. 18, 1990.

Gregory A. Clifton, Detroit, Mich., for plaintiff.

Michael F. Schmidt, Detroit, Mich., for defendant.

## OPINION

DUGGAN, District Judge.

On November 9, 1989, Consolidated Rail Corporation ("Conrail"), the plaintiff in this matter, filed a complaint against Ford Motor Company ("Ford"), the defendant in this matter. Conrail's complaint seeks contractual indemnity from Ford for the settlement monies paid out by Conrail for claims made against it by Sidney P. Young, a Conrail employee. This matter is presently before the Court on Ford's July 16, 1990, Motion for Summary Judgment filed pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.

### I. Summary Judgment

■ To warrant the grant of summary judgment under Fed.R.Civ.P. 56, the moving party must show that "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the party against whom the motion is offered fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then

summary judgment under Rule 56 is appropriate. *Id.*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53. The moving party, however, bears the initial burden of informing the district court of the reasons for its motion, and identifying the absence of a genuine issue of material fact.[1] *Id.*, 477 U.S. at 323, 106 S.Ct. at 2553.

In determining whether there are issues of fact requiring a trial "the inferences to be drawn from the underlying acts contained in the [affidavits, attached exhibits and depositions] must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Industries Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). Also, even though the basic facts may not be disputed, summary judgment may be inappropriate when contradictory inferences may be drawn from such facts. *See United States v. Diebold, Inc., supra; EEOC v. United Assoc. of Journeymen & Apprentices of the Plumbing & Pipefitting Industry, Local 189*, 427 F.2d 1091 (6th Cir.1970).

■ In response to Ford's motion, Conrail submits that summary judgment is inappropriate here because there still remain genuine issues as to material facts. The Court recognizes that the motion before it is an extraordinary remedy. However, this does not mean that summary judgment should be disfavored; it may be an appropriate avenue for the just, speedy and inexpensive determination of a matter. *Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934 (6th Cir.1989).

### II. Factual Background

On December 28, 1987, a Conrail employee, Sidney P. Young ("Young"), sustained injuries when the railcar he was working on hit an obstruction. The accident occurred on track number 6 at Ford's Sterling Axle Plant. Young had been hanging

---

1. More succinctly, the moving party has the burden of "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.*, 477 U.S. at 325, 106 S.Ct. at 2554.

onto the railcar in performance of his job as pointman/brakeman during the positioning of Conrail cars at the Ford plant.

Young filed suit in federal court against Conrail, under the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.* ("FELA"), and against Ford, under a theory of common law negligence. Ford was subsequently dismissed from the action on the basis of improper subject matter jurisdiction.[2] On November 15, 1989, Conrail settled with Young for $225,000.

At the time of the accident there was in effect between Conrail and Ford a "Private Sidetrack Agreement" ("Sidetrack Agreement"), entered into on January 1, 1968, which set forth the rights and duties of each party with regard to rail operations at the Sterling Axle plant.[3] Two provisions of the Sidetrack Agreement are relevant to the Motion presently under consideration: paragraphs 7 and 9. Conrail asserts that under one or both of these provisions Ford is required to indemnify it for the settlement paid out to Young. Ford disputes this and asserts that Conrail must show that it was actually liable to Young in the federal suit before it may seek indemnity under the Sidetrack Agreement.

### III. Discussion: The Applicable Law

■ There are two well-established rules which apply to the situation where an indemnitee settles a claim against it, before it has been found liable on the claim, and then seeks reimbursement from the indemnitor. The first rule holds that if the indemnitee settled the claim against it *before* seeking the approval of, or tendering the defense to, the indemnitor, then the indemnitee must prove its *actual* liability to the claimant in order to successfully seek indemnification from the indemnitor. *Tankrederiet Gefion A/S v. Hyman–Michaels Co.*, 406 F.2d 1039, 1042 (6th Cir.1969). This rule applies even where the indemnitor had full notice of the litigation, was

notified of the settlement negotiations and was invited to participate therein. *Id.*

■ The second rule requires that an indemnitee who settles a claim against it before liability has been determined, need only show potential liability in order to require the indemnitor to indemnify him for the settlement that has been paid out. This rule is used where: (1) an enforceable contract of indemnity exists between the indemnitor and indemnitee, (2) a seasonable tender of defense to the claim along with notice that a settlement will be entered is made by the indemnitee to the indemnitor, and (3) the indemnitor refuses the tender of the defense. *Ford v. Clark Equipment Co.*, 87 Mich.App. 270, 277, 274 N.W.2d 33 (1978). If these requirements are met the indemnitee must further show: (1) that the fact situation of the original claim was covered by the contract of indemnity, and (2) that the settlement was reasonable. *Id.*, 87 Mich.App. at 277–78, 274 N.W.2d 33. Reasonableness was defined by the Court of Appeals as follows:

> The reasonableness of the settlement consists of two components which are inter-related. The fact finder must look at the amount paid in settlement of the claim in light of the risk of exposure. The risk of exposure is the probable amount of a judgment if the original plaintiff were to prevail at trial balanced against the possibility that the original defendant would have prevailed.

*Id.* at 278, 274 N.W.2d 33.

■ Ford's Motion for Summary Judgment is premised on the argument that, as an indemnitor, it should not be required to indemnify Conrail, where, according to Ford, Conrail settled the Young case unreasonably close to trial and without first properly tendering the defense of the suit to Ford and informing it of the settlement amount. Accordingly, Ford asserts that under *Tankrederiet* 's rule, Conrail must prove its actual liability to Young in the

---

**2.** Ford is presently being sued by Young in Macomb County Circuit Court.

**3.** Ford, in its Motion for Summary Judgment, does not admit that this agreement applies in the present matter, but asserts that even if it did,

Ford would be under no obligation to indemnify Conrail for the Young settlement. For the purposes of this opinion only, the Court assumes the Sidetrack Agreement does apply to the present matter.

federal suit along with its contractual right to indemnification under the Sidetrack Agreement in order to successfully seek reimbursement from Ford for the settlement paid out to Young. This, Ford contends, Conrail cannot do because in order for Conrail to validly seek indemnification under the Sidetrack Agreement, it must show that Ford was negligent, and therefore the liable party, and that Conrail was not negligent, and therefore not the liable party.[1]

Conrail counters these arguments by contending that it need only show it was potentially liable to Young, per the *Clark Equipment* rule, in order to seek indemnification from Ford for the settlement. Conrail argues it can show its potential, if not actual liability, to Young under FELA. Further, Conrail asserts that the facts in this case allow it to seek reimbursement from Ford under paragraphs 7 and 9 of the Sidetrack Agreement.

Upon examination of the pleadings, depositions, exhibits and other evidence submitted by the parties, and viewing the inferences to be drawn from these submissions "in the light most favorable to the party opposing the motion," Conrail, this Court concludes that there remain genuine issues as to material fact in the present matter.

First, it remains unclear as to whether the actual liability rule of *Tankrederiet* or the potential liability rule of *Clark Equipment* should be used in resolving Conrail's indemnification claim. The record before the Court raises questions as to the adequacy of the notice given by Conrail to Ford concerning the Young suit and its

settlement by Conrail. There is a November 7, 1989, letter from Conrail to Ford which advises Ford of the suit filed by Young against Conrail and tenders the defense of the case along with a hold-harmless agreement to Ford.[5] There is also a letter from Ford to Conrail on November 10, 1989, which refers to the November 7 Conrail letter and various phone conversations. In this letter Ford complains that Conrail's tender of defense was made with "inadequate notice" because it came "one day before trial." *See* Exhibit B attached to Ford's Motion for Summary Judgment. Additionally, there is a November 21, 1989, letter from Conrail to Ford stating that the Young suit in federal court had been settled for $225,000 and seeking reimbursement from Ford under the Sidetrack Agreement's indemnity provisions. This letter also refers to November 14, 1989, discussions between Conrail and Ford concerning the trial and Conrail's settlement negotiations with Young. *See* Exhibit 10 attached to Conrail's Brief in Opposition to Ford's Motion for Summary Judgment.

From these communications, Ford asserts that the *actual* liability rule of *Tankrederiet* applies because Conrail did not tender notice of the settlement with Young prior to its completion. In support of this proposition Ford cites *Ford v. Clark Equipment Co.*, 87 Mich.App. 270, 274 N.W.2d 33 (1978) and *Pritts v. J.I. Case Co.*, 108 Mich.App. 22, 310 N.W.2d 261 (1981). Conrail asserts that the communications between it and Ford provide support for its claim that the *potential* liability rule of *Clark Equipment* should apply to the resolution of its indemnification claim.

---

4. Paragraph 7 of the Sidetrack Agreement requires Ford to maintain certain clearances around the tracks at the Sterling Axle Plant and provides that Ford shall indemnify and hold harmless Conrail from liability arising out of injuries caused by any failure by Ford to fulfill its duty. In pertinent part, paragraph 9 of the Sidetrack Agreement requires Ford to assume liability for any injuries caused to Conrail or its employees arising out of the sole negligence of Ford.

5. The November 7, 1989, letter specifically stated:

Based upon the foregoing and express terms of the [Sidetrack] [A]greement, please be advised that Consolidated Rail Corporation is formally tendering to Ford Motor Company its defense of the above-captioned federal action. Consolidated Rail Corporation hereby demands that Ford Motor Company assume the defense of, indemnify and hold harmless Consolidated Rail Corporation from and against all liability, loss, and expense (including legal expenses and attorney fees) in connection with the above action....

*See* Exhibit 7 attached to Conrail's Brief in Opposition to Ford's Motion for Summary Judgment.

The communications between the parties concerning Young's suit against Conrail and its settlement present issues which require a further development of the facts in order to determine if Conrail satisfied the requirements of the potential liability rule of *Clark Equipment* or whether it must use the actual liabilty rule of *Tankrederiet.* Specifically, it must be determined whether or not Conrail's communications with Ford met *Clark Equipment*'s requirement that the indemnitee make a seasonable tender of defense of the claim to the indemnitor along with notice that a settlement would be entered. Such decision, of course, depends on all the facts and circumstances surrounding the communication between the parties prior to the actual settlement.

The fact that an issue exists as to which liability test applies does not mean that Ford cannot prevail on its motion. If it can show that Conrail cannot *prove* it was potentially *or* actually liable, then under either test, Conrail would not be entitled to seek indemnification from Ford. On this issue both Conrail and Ford have submitted the deposition testimony of the various Conrail and Ford individuals who were involved in the accident giving rise to Young's claim. Ford contends that this testimony shows that Conrail cannot prove its actual, or potential liability, because: (1) Ford's negligence caused the accident, and therefore Ford, not Conrail is the liable party, or (2) the accident occurred because Conrail was using an unauthorized track, and therefore the indemnification requirements of the Sidetrack Agreement are not met, or (3) the accident occurred as a result of Young's negligence, and therefore there is no liability on the part of Conrail.

Conrail contends that the deposition testimony shows that Ford's negligence was the cause of the accident and that Conrail was using the proper track at the time of the accident. Since it can show that Ford's negligence caused the accident, Conrail argues, indemnification would be allowed under either paragraph 7 or 9 of the Sidetrack Agreement. Conrail further asserts that it can satisfy either the potential liability or the actual liability rules by showing that it was potentially, or actually, liable to Young under FELA.

Ford argues that if no negligence could be attributed to Conrail, then Conrail could not have been held liable. This would be true whether the *only* negligence was that of Ford or Young or both of them. Ford contends that the evidence supports a conclusion that the *only* negligence was on the part of Ford or Young or both. Consequently, Ford argues, Conrail was not justified in settling the case and cannot seek indemnification.

The Court does not believe that the deposition testimony offered by both parties establishes, as a matter of law, that Conrail was not, or could not have been held, liable. In this Court's opinion, a genuine issue of fact exists as to whose negligence caused Young's injuries.

Next, Conrail asserts that if Ford were negligent, a case which would allow Conrail to seek indemnification under the Sidetrack Agreement, such negligence could be "imputed" to Conrail under FELA. Conrail relies on two cases as authority for this proposition: *Payne v. Baltimore & Ohio Railroad Co.,* 309 F.2d 546 (6th Cir.1962) and *Empey v. Grand Trunk Western Railroad,* 869 F.2d 293 (6th Cir.1989). Specifically, Conrail relies on the following language in *Payne*:

A railroad has the non-delegable duty to provide an employee with a safe place to work. This is so despite the fact that it may not own, control or be under a primary obligation to maintain the premises on which the employee is injured. A railroad is not relieved from liability because such premises are unsafe or because of the existence of an unsafe condition brought about through the act of another and without fault, on the railroad's part.

*Payne*, 309 F.2d at 549 (citations omitted). Also, Conrail relies on the *Empey* court's statement that:

In the instant action, Grand Trunk contends that it should not be held liable for the DML's or Richmond Co-op's negligently maintained premises because the unsafe conditions occurred without fault

on its part. Because *Payne* controls this case and because *Payne*'s holding is consistent with the Supreme Court's rulings in *Sinkler* [*v. Missouri Pacific R. Co.*, 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958)], *Ward* [*v. Atlantic Coast R. Co.*, 362 U.S. 396, 80 S.Ct. 789, 4 L.Ed.2d 820 (1960)] and *Shenker* [*v. Baltimore & Ohio R. Co.*, 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963)], we accordingly hold that the district court properly imputed the negligence of the DML and Richmond Co-op to Grand Trunk.

*Empey*, 869 F.2d at 297. From these rulings Conrail concludes that its liability to Young arose, not because of any negligence by Conrail, but because the negligence of Ford could be imputed to Conrail in the FELA action pursuant to *Payne* and *Empey*. This fact, Conrail asserts, is enough to show it was, at the very least, potentially liable to Young in the federal suit.

Ford disputes Conrail's imputed liability argument. It argues that *Payne* and *Empey* require a railroad to delegate operational activities to a third party in order for imputed liability to apply and that this did not occur in the present case. In support of its position Ford relies on the arguments put forward by Conrail in its defense of Young's federal suit.[6] There Conrail had argued that it had not delegated any operational activities to Ford and, as a result, Young could not impute any liability of Ford to Conrail in his FELA action.

This Court finds Ford's arguments on this issue unpersuasive. It is possible, notwithstanding Conrail's previous arguments, which were *arguments*, not findings of fact or law, that Conrail did delegate some operational activities to Ford via the Sidetrack Agreement. The Sidetrack Agreement's provisions appear to give Ford powers over the general maintenance and upkeep of the Sterling Axle Plant's rail facilities and make Ford liable for any occurrences resulting from a failure to perform

such duties. Additionally, there is deposition testimony to the effect that Ford personnel maintain partial or complete control over the Sterling Axle Plant's railyard—control which would normally be in the hands of the railroad.

Furthermore, it is not clear whether the "delegation" of operational activities by a railroad to a third party is an absolute requirement for imputed negligence under *Payne* and *Empey*. The Sixth Circuit's discussion of imputed liability in *Empey* appears to recognize two bases for such liability: (1) imputed liability via delegation of operational activities by a railroad to a third party, labelled the "agency doctrine" by the *Empey* court, and (2) imputed liability via the Supreme Court's ruling in *Shenker v. Baltimore and Ohio Railroad Co.*, 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963). *Empey*, at 296. Under *Shenker*, which the *Empey* court said was in accord with *Payne*, the Sixth Circuit stated that a *broad* rule was created whereby a railroad had a "non-delegable" duty "to provide its employees a safe place to work even where they are required to go onto the premises of a third party over which the railroad has no control." *Id.* (quoting *Shenker*, 374 U.S. at 7, 83 S.Ct. at 1671). Using this broad rule, the *Empey* court imputed liability under FELA to the defendant railroad for an employee's injury sustained when he fell into a weed-covered hole next to a railroad track on a third party's property. *Id.* at 297. It follows that Ford's argument that Conrail did not delegate any operational activities to Ford and that therefore Conrail cannot show any imputed liability to Young under FELA is not conclusive. There remain factual issues as to the question of delegation by Conrail and issues relating to the circumstances under which imputed liability will apply under the rulings in *Payne* and *Empey*.

---

6. Ford asserts that Conrail cannot take a contrary position on this issue in the present matter for "numerous reasons, ethical and otherwise." As authority for this rather novel proposition, Ford cites *Johnson v. Harper–Grace Hosp.*, 92 Mich.App. 202, 284 N.W.2d 520 (1979). *Johnson* dealt with estoppel and the exclusive remedy provision of Michigan's Workers' Disability Compensation Act. As such, it is inapposite authority for the proposition Ford asserts.

## IV. Conclusion

There remain issues of fact as to: (1) whose negligence caused the injury to Young, (2) which liability rule, the actual liability rule of *Tankrederiet* or the potential liability rule of *Clark Equipment*, should apply, and (3) whether Conrail can show it was potentially, or actually, liable to Young in the federal suit that was settled.

Accordingly, Ford's Motion for Summary Judgment is denied. An order consistent with this opinion shall issue.