630 So.2d 257 (1993)
Grant TINGSTROM, III, appellant,
v.
William L. SMITH d/b/a Smitty's Cab Service, Comco Insurance Company, Missouri Pacific Railroad Company and Union Pacific Railroad Company, appellees.
No. 90 CA 2283R.
Court of Appeal of Louisiana, First Circuit.
October 15, 1993.
Rehearing Denied December 6, 1993.
Writ Denied February 4, 1994.
*259 Rebel G. Ryland, Columbia, Russell A. Woodard, Ruston, for Grant Tingstrom, III.
Janice B. Unland, Gregory Murphy, Metairie, for William L. Smith d/b/a Smitty's Cab Service and Comco Ins. Co.
Boris F. Navratil, Baton Rouge, for Missouri Pacific R. Co. Union Pacific R. Co.
Before LOTTINGER, C.J., and FOIL, FOGG, PITCHER and PARRO, JJ.
LOTTINGER, Chief Judge.
This case was remanded by the Louisiana Supreme Court for a full opinion. Tingstrom v. Smith, 612 So.2d 38 (La.1992). The original opinion of this court appears at 610 So.2d 1132. A remand for a full opinion does not limit the appellate review authority of this court on remand, and thus after a careful reconsideration of our original opinion, we conclude that we erred in affirming the trial court judgment and now revisit this appeal.

FACTS
This suit for damages in tort was brought by Grant Tingstrom, III, an engineer for Missouri Pacific Railroad Company and Union Pacific Railroad Company (MOPAC). The material facts of this case are not in dispute. Tingstrom and three other MOPAC employees were operating a "spray train" which sprayed the railroads tracks with chemicals in order to clear the tracks of plant growth. Tingstrom left Avondale, Louisiana, his home terminal, on March 7, 1989. The spray train discontinued operations for the day in Addis, Louisiana. Pursuant to an agreement between MOPAC and the railworkers union, MOPAC was to provide lodging and transportation whenever employees were required to stay overnight at a place other than their home terminal. MOPAC contracted with the Newcourt Inn in Addis to provide lodging and transportation to and from the rail yard. The Newcourt Inn then contracted with Smitty's Cab Service to provide transportation.
On March 8, 1989, the crew began and ended their day at the yard in Addis without incident. On March 9, 1989, en route to the Addis yard, the taxicab in which the crew was riding rear-ended a full-size van at a stoplight. Mr. Tingstrom, who was riding in the back seat behind the driver, suffered abrasions on his back and complained of stiffness in the lower back area. As a result of those injuries Mr. Tingstrom has undergone two separate operations on his back, and is to date unable to perform his previous job duties due to his physical condition.
Mr. Tingstrom brought suit against William L. Smith, the driver of the taxicab, Smitty's Cab Service, the owner of the taxicab, and MOPAC. The claims against the driver and owner of the taxicab are based on negligence. The suit against MOPAC is based on the Federal Employers' Liability Act (FELA), Title 45, U.S.C.A. sec. 51, which provides in pertinent part:

*260 Every common carrier by railroad while engaging in commerce between any of the several States or Territories ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier....
The jury returned a verdict in favor of the plaintiff in an amount of $40,000.00 against William L. Smith and Smitty's Cab Service. The compensation was for past pain and suffering only and was reduced by 50% based on the comparative negligence of the plaintiff. The jury found that MOPAC was not liable for the plaintiff's injuries because Mr. Tingstrom was not in the course and scope of his employment at the time of the accident. The trial judge granted the plaintiff's motion for JNOV with respect to the issue of comparative negligence.

ASSIGNMENTS OF ERROR
The plaintiff presents the following "Specifications of Errors and Issues Presented for Review:"
I. The jury verdict was clearly wrong and not supported by a preponderance of the evidence.
A. Missouri-Pacific should have been found liable for Tingstrom's injuries.
1. Tingstrom should have been found to be within the course and scope of his employment with Missouri-Pacific.
2. William Smith d/b/a Smitty's Cab Service should have been found to be an agent or employee of the railroad.
3. The railroad should have been found liable for the defective nature of Smith's cab.
B. The jury erred in failing to award Tingstrom:
1. Adequate damages for past pain and suffering
2. Any damages for future pain and suffering
3. Any past or future medical expense and,
4. Any past or future loss of income.
II. The Court erred and the Plaintiff was unduly prejudiced by:
A. The Court allowing the testimony of Dr. Allen Joseph who was not listed on the pre-trial.
B. The Court allowing Pat Crabtree to talk about jobs that Tingstrom could allegedly do.
C. The Court allowing defense counsel to give testimony in argument which testimony was totally unsupported by and contradicted by actual evidence.
D. Failing to give Plaintiff's Requested Instructions No. 25 and 29.
E. Giving Missouri-Pacific Instruction No. 15.

DISCUSSION
Initially we must determine what scope of review is to be applied, federal or state. In a recent decision of this court, Dufour v. Union Pacific Railroad Company, 610 So.2d 843 (La.App. 1st Cir.1992), writ denied, 614 So.2d 1263 (La.1993), it was held that with respect to actions brought under the FELA, federal standards of review are to be applied by the reviewing state court. See also Trahan v. Gulf Crews, Inc., 260 La. 29, 255 So.2d 63, 66-67 (1971) and Bailey v. Missouri Pacific Railroad Co., 383 So.2d 397, 401 (La.App. 3rd Cir.), writ denied, 385 So.2d 784 (La.1980). The standard of review for factual determinations in FELA cases has been articulated as follows: "[o]nly when there is a complete absence of probative facts to support the conclusion reached by the jury does reversible error occur." Dennis v. Denver & Rio Grande Western Railroad Co., 375 U.S. 208, 84 S.Ct. 291, 11 L.Ed.2d 256 (1963). With respect to the trial court's legal conclusions we review the issues de novo.
In order for a plaintiff to prevail on a FELA claim he must establish the following: 1) that the injury complained of occurred while the plaintiff was in the course and scope employment 2) that the injury occurred as a result of negligence 3) that the negligence was perpetrated by the employer or an agent of the employer and, 4) the extent of damage done to the plaintiff.

*261 I.
We address first the question of whether or not the plaintiff was in the course and scope of his employment at the time of the injury. In an early decision of the United States Supreme Court, Erie Railroad Company v. Winfield, 244 U.S. 170, 37 S.Ct. 556, 61 L.Ed. 1057 (1917), it was held that a rail worker killed crossing the tracks after his shift had ended was in the course of his employment with the railroad, as the crossing was a "necessary incident of his day's work." The wife of the deceased worker was therefore allowed to maintain the action under the FELA statute. It is the plaintiff's position that the transportation between the yard in Addis and the Newcourt Inn was a necessary incident to the plaintiff's work day.
MOPAC, on the other hand, argues that the controlling cases are "commuter cases" in which the courts have typically held that an employee commuting to and from the worksite from his home, using the employer's trains as a means of transportation, is not within the course and scope of employment. In these cases the determinative issue has been that the employees had freedom of choice as to what mode of transport they would use to get to and from work. See Young v. New York, N.H. & H.R. Co., 74 F.2d 251 (2d Cir.1934), which held that an employee injured while commuting was not in the course and scope of employment, viewing as dispositive the fact that the employee had a choice of route Sassaman v. Pennsylvania R. Co., 144 F.2d 950 (3rd Cir.1944), which found that absent employer compulsion as to the mode of travel to and from work no recovery is available under FELA Metropolitan Coal Company v. Johnson, 265 F.2d 173, 178 (1st Cir.1959), where the court found that an employee injured on the employer's train while commuting was not within the course and scope of his employment as, "[h]e was not required to go to work on the defendant's passenger train" and the defendants's train was only one of several means of transportation the plaintiff may have chosen, and Getty v. Boston and Maine Corporation, 505 F.2d 1226, 1228 (1st Cir. 1974), which found that, "absent circumstance indicating a special arrangement with one's employer, subjective conditions resulting from employee choices of where to live and how to travel are insufficiently related to employment to determine coverage of the federal statute." Given the obvious distinctions between the present case and the commuter cases, to wit, that the plaintiff was not traveling from his home to his place of work, but from his place of work to employer provided lodging, and that the plaintiff did not exercise any choice as to the means of transport, we find these cases inapposite.
The plaintiff points our attention to Leek v. Baltimore & Ohio Railroad Company, 200 F.Supp. 368 (N.D.W.V.1962), which held that employees who were injured while being transported by cab, pursuant to an agreement between the cab company and the railroad, from their worksite to the rail yard where they were to sign-off for the day were in the course and scope of their employment. MOPAC would have us distinguish this case from the present case as in Leek the plaintiff had not officially ended the workday at the time of the accident, whereas in the present case, the plaintiff had not begun his workday at the time of the accident. Given the reasoning behind the holding of the following cases we find this distinction to be artificial.
In Empey v. Grand Trunk Western Railroad Co., 869 F.2d 293 (6th Cir.1989), a railroad employer contracted with a private motor lodge to provide railroad employees lodging during layovers. While at the lodge the employee slipped on the floor of the bathroom which was wet due to a defective latch on the shower door. The appellate court held, "an employee who is injured while he avails himself of housing which his employer has provided and implicitly encouraged him to use is within the scope of his employment for the purposes of the FELA." Id. at 295. The court agreed with the trial court's holding that as a matter of law the employee was within the course and scope of his employment. See also Carney v. Pittsburgh & Lake Erie Railroad Company, 316 F.2d 277 (3rd Cir.), cert. denied, 375 U.S. 814, 84 S.Ct. 45, 11 L.Ed.2d 49 (1963), which held that a railroad employee was within the course and scope of his employment while staying overnight at a YMCA. In the present case it is undisputed that the MOPAC implicitly encouraged *262 its' employees to use Smitty's Cab Service for transportation. There was no evidence presented to the effect that the railroad would have reimbursed the plaintiff if he had sought other means of transportation to the hotel. We see no reason to distinguish between the overnight stay itself and the employer provided ride to and from the lodging.
We therefore find that as a matter of law the plaintiff was within the course and scope of his employment with MOPAC at the time of his injuries. The cab ride from the hotel to the Addis yard was a necessary incident to his day's work. The plaintiff had no control over the means of transportation as all arrangements were made by MOPAC. Facts adduced at trial which reinforce this conclusion include the following: MOPAC required specific insurance limits for cabs providing services to its' employees MOPAC representatives inspected the cab and, MOPAC required the cab driver to display a MOPAC sign in the cab delineating company rules. MOPAC implicitly encouraged its' employees to use Smitty's Cab Service. This issue was improperly submitted to the jury as there was no evidence submitted by MOPAC from which the jury could have concluded that the plaintiff was not within the course and scope of his employment at the time of the accident.

II.
We next turn to the issue of whether or not the negligence of Smitty's Cab Company, which is not in dispute, can be imputed to MOPAC based on FELA agency theory. The United States Supreme Court addressed this issue, as well as the general purpose of FELA, in Sinkler v. Missouri Pacific Railroad Company, 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958). In Sinkler, a MOPAC employee was injured due to the negligence of a switching crew. The switching crew was not employed by MOPAC, yet the court found that the crew was an "agent" of MOPAC for FELA purposes and its' negligence was imputed to MOPAC. The court noted that FELA was a departure from the common law and was a "response to the needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety." 356 U.S. at 329, 78 S.Ct. at 762. The holding of the court was that when an employee is injured as a result of the negligence of others performing "operational activities" of the railroad, such others are "agents" of the employer within the meaning of the FELA.
In Leek v. Baltimore & Ohio Railroad Company, 200 F.Supp. at 370-371, the court found that one of the characteristics of the railroad business is transporting employees from one point to another. That court found the negligence of the cab driver imputable to the railroad under FELA agency theory. The court dealt with the issue of operational activities as follows:
Certainly, there must be many services performed by others under contract with a railroad, which are incidental or even necessary to the corporate purposes of the railroad, which are not "operational activities" within the meaning of those words as employed in the Sinkler case. Just where the line should be drawn, I am neither prepared nor called upon to specify. However, I do not believe that the line should be drawn short of the activities which the taxicab company was performing for the railroad in this case.
200 F.Supp. at 370.
The Jones Act specifically incorporates the standards of FELA with respect to an employer's liability for the acts of agents. In Hopson v. Texaco, 383 U.S. 262, 86 S.Ct. 765, 15 L.Ed.2d 740 (1966), the court found that the negligence of a cab driver hired by a shipowner to transport two sick seamen to the U.S. Consulate in Trinidad was imputable to the shipowner under FELA agency theory. The court found that the transportation of the seamen was a vital part of the ship's total operations.
Finally, the courts in both Carney v. Pittsburgh & Lake Erie Railroad Company, 316 F.2d at 281-282 and Empey v. Grand Trunk Western Railroad Co., 869 F.2d at 296-297 held that the parties providing lodging for the railroads were performing operational activities *263 of the railroad, thus their negligence was imputable to the railroad.
We therefore hold that FELA is applicable to the plaintiff's claims. He was engaged in the course and scope of his employment with the railroad while being transported by cab to the worksite. The negligence of the cab driver is imputable to MOPAC as the cab driver was performing operational activities of the railroad at the time of the accident. MOPAC's arguments to the effect that it should not be held liable as Newcourt Inn chose the cab company are unpersuasive. MOPAC cannot insulate itself from liability by simply contracting with a third party.

III.
Plaintiff further contends that the jury should have found MOPAC liable for the defective nature of the cab. That is, the plaintiff testified that the door of the cab was missing its interior panel and that the broken door handle caused the abrasions on his back. Given the fact that the jury verdict did not distinguish between the cab driver's negligent operation of the vehicle and the negligent maintenance of the vehicle we are unable to rule on this matter. As MOPAC is liable for the acts of Smitty's Cab Company under the aforementioned agency theory, the precise acts of negligence are irrelevant.

IV.
As stated above the standard of review with respect to the jury's damage award to the plaintiff is whether there is a complete absence of probative facts to support the conclusion reached by the jury. The jury awarded the plaintiff $40,000.00 for past pain and suffering, but refused to award the plaintiff any damages for future pain and suffering, past medical expenses, future medical expenses, or past or future loss of income.
With respect to past and future medical expenses the plaintiff established that the two operations conducted prior to trial cost $42,931.46. The plaintiff also produced evidence that an additional operation would be required at a cost of $25,000.00. The defense produced no evidence to the effect that the surgeries were unnecessary or that the expenses incurred by the plaintiff were inaccurate. The only evidence put on by the defense with respect to past and future medical expenses was the testimony of a doctor who examined the plaintiff's medical records and testified that the plaintiff had a congenital predisposition to the type of back injury from which he currently suffers. The fact that the plaintiff may have been predisposed to a back injury is immaterial to the determination of liability. The defendant takes the plaintiff as he finds him. We therefore conclude that there was a complete absence of probative facts from which the jury could conclude that the plaintiff's past and future medical expenses were unrecoverable, and accordingly, we award the plaintiff $67,931.46.
With respect to past and future lost wages, we find that there were no probative facts introduced by the defense from which the jury could have concluded that no award was due to the plaintiff. The plaintiff established through documentary evidence and testimony that his past lost wages were $68,892.00. The plaintiff also established, through the testimony of an economist, that his future earning capacity had been reduced by $725,441.00. Based on the variables utilized by the economist, we feel $600,000.00 represents a more accurate and reasonable estimation of the plaintiff's actual loss of future earning capacity.
With respect to past, present and future pain and suffering, it is the opinion of this court that an award of $40,000.00 was unsupported by probative facts. On July 13, 1988, a percutaneous automated discectomy was performed on the plaintiff. The plaintiff was released from the hospital on July 15, 1988. This operation did not alleviate the plaintiff's pain. According to the plaintiff's medical records, a second doctor performed fusions of the plaintiff's discs on June 21, 1989. The plaintiff was released from the hospital on June 28, 1989. According to the plaintiff's doctor, at the time of the second operation the plaintiff had as severe of back muscle spasms as one can have, making his back as hard as wood. The plaintiff is unable to bend his back. He must wear a back *264 brace at all times to hold the back stable until the fusions become solid. The plaintiff's doctor testified that another operation may be required, and even then the plaintiff will have a fragile back and possibly permanent nerve damage. The defense introduced no evidence rebutting the plaintiff's claims of pain and suffering. Instead, the defense relied on it's unsubstantiated contention that the plaintiff was a dishonest malingerer. This contention was not supported by any probative facts in the record. As such, we award the plaintiff a total of $300,000.00 in past, present and future pain and suffering.

V.
Plaintiff claims that the trial judge erred in allowing the defense witness, Dr. Allen Joseph, to testify as he was not listed in the pre-trial order. La.Code Civ.Pro. art. 1551 states, in pertinent part, that the pretrial order may be modified by the trial judge "at the trial to prevent manifest injustice." As Dr. Joseph was MOPAC's only witness and was substituted for the Doctor listed on the pre-trial order, we find that the trial judge's modification of the order was appropriate.
Further, the plaintiff contends that the trial judge erred in allowing Pat Crabtree, MOPAC's Louisiana Supervisor, to discuss what other jobs the plaintiff could perform in his current condition. This testimony is clearly relevant under La.Evid.Code art. 401 as it has the tendency to make a fact of consequence, the future earning potential of the plaintiff, more or less probable. The witness also clearly has personal knowledge of the types of jobs available with his employer, thus satisfying La.Evid.Code art. 601 and 602. If the plaintiff wished to test the availability of these types of jobs it was a proper topic for cross examination.
The plaintiff also argues that the trial court erred in allowing the counsel for MOPAC to give testimony in argument which was unsupported and contradicted by the evidence. While not finding that MOPAC's counsel misrepresented evidence in argument to the jury, if that were the case, the plaintiff, under La.Code Civ.Pro. art. 1632, is entitled to point out such errors to the jury in the rebuttal portion of his closing argument.
In as much as we have previously discussed the trial court's error in submitting instructions to the jury as to the FELA, we need not address the adequacy of the instructions.
Therefore, for the above and foregoing reasons, the judgment of the trial court to the extent that it found liability on the part of William L. Smith and Smitty's Cab Service is affirmed, to the extent that it found no liability on the part of Missouri Pacific Railroad Company and Union Pacific Railroad Company is reversed, and to the extent of the damages awarded, the judgment is amended. There is now judgment in favor of plaintiff, Grant Tingstrom, III, and against William L. Smith, Comco Insurance Company and Missouri Pacific Railroad Company and Union Pacific Railroad Company, in solido, in the sum of $1,036,823.46, together with judicial interest from date of judicial demand, until paid, and for all costs of this proceeding. However, as to Comco Insurance Company, this judgment is limited to the sum of $25,000.00, the limit of its applicable liability insurance coverage, together with interest payable pursuant to the provisions of its insurance contract.
AFFIRMED IN PART, REVERSED IN PART, AMENDED and RENDERED.
FOIL, J., dissents and assigns reasons.
PARRO, J., dissents for reasons assigned by FOIL, J.
FOIL, Judge, Dissenting.
I respectfully dissent.
This case is on remand from the Louisiana Supreme Court. Originally, another panel of this court affirmed the trial court's ruling. Tingstrom v. Smith, 610 So.2d 1132 (La.App. 1st. Cir.1992).
The initial opinion of this court was a one page opinion, which concluded as follows:
After a thorough review and evaluation of the record, we are convinced the judgment rendered by the trial court was correct.
*265 Thereafter, no party applied for a rehearing in this court, but an application for writs was applied for in the Louisiana Supreme Court. The action of the Supreme Court was as follows:
Granted and remanded to the Court of Appeal, 1st Circuit, for a full opinion.
When this court handed down its opinion and the time for application for rehearing had expired, the decision of this court was final. Only the Supreme Court could then reverse or modify the judgment. The Supreme Court has not done so. It merely remanded the case to us for a full opinion. It apparently wanted a full explanation as to why we affirmed the trial court. And I feel that is all we are authorized to do at this stage of the proceedings.
I feel that this court is without authority to completely change the outcome of the case, as the majority does here. If there is to be any change in the case, only the Supreme Court has the authority to do so at this time.
For the foregoing reasons, I respectfully dissent.