Randy ARMSTRONG, Plaintiff–
Appellant,

v.

BURLINGTON NORTHERN RAILROAD
COMPANY, a corporation,
Defendant–Appellee.

No. 96–35769.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 4, 1997.

Decided March 26, 1998.

Philip G. Arnold, Stephenson & Arnold, Seattle, WA, for plaintiff-appellant.

Daniel L. Kinerk, Kroschel & Gibson, Bellevue, WA, for defendant-appellee.

Before: REAVLEY,* GOODWIN and KLEINFELD, Circuit Judges.

REAVLEY, Circuit Judge:

Appellant Randy Armstrong sued his employer, Appellee Burlington Northern Railroad Company (Burlington), under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60, for injuries he sustained when he was assaulted by a coworker. The district court granted summary judgment in favor of Burlington. Because we conclude that Armstrong presented sufficient evidence to avoid summary judgment, we reverse.

## BACKGROUND

In 1995 Armstrong was employed by Burlington as a track worker on a wood tie gang near Pasco, Washington. At that location Burlington provided motel accommodations at the Vineyard Inn. Burlington paid for these accommodations; employees wishing to stay elsewhere had to pay for their own accommodations.

According to Armstrong, he loaned twenty dollars to Quentin Smith, another member of the work crew. On or about June 1, Smith told Armstrong after work that he would not return the money. Later that evening Smith went to Armstrong's room at the Vineyard Inn, announced that he did not have to pay back the money, and assaulted Armstrong. Armstrong suffered a broken nose, black eyes, and other injuries. Smith threatened to shoot Armstrong if he told anyone about the incident.

Another track worker, Melvin Brown, stated by affidavit that Smith assaulted him in April of 1995. Smith verbally taunted Brown and then struck him with a spike maul handle. Brown took away the handle and struck

back. Smith then grabbed a large nut and bolt. Brown ran away and reported the incident to a supervisor, who told Smith and Brown to settle their differences. Smith then told Brown that he was selling drugs, using cocaine himself, and supplying most of the other gang workers. Smith said "he had killed or shot some guy back in Arkansas." Smith pulled a gun out of his pants and swung it toward Brown. Brown recalled telling at least one and perhaps two supervisors about the gun. Brown was also sure he told one supervisor, within a few days of the assault, that Smith had told him he was using drugs and selling them to the gang. Brown left the gang on May 21, before the arrival of Armstrong.

Another track worker, Curt Shockey, stated by affidavit that he saw the incident between Smith and Brown. Smith told Brown, "I'll get my gun and shoot you." Later that day Shockey told a supervisor about Smith's threat to use the gun.

Burlington's operating procedures and safety regulations prohibit employees on duty from possessing or using controlled substances, engaging in altercations, and possessing firearms, and require employees to report violations of the rules to a supervisor.

## DISCUSSION

We review *de novo* a district court's grant of summary judgment. *20th Century Ins. Co. v. Liberty Mut. Ins. Co.*, 965 F.2d 747, 749 (9th Cir.1992). "Under Rule 56(c), summary judgment is proper when the pleadings and discovery, read in the light most favorable to the nonmoving party, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 750.

### A. Negligence

■ "[A]lthough railroad companies do not insure against accidents and the plaintiff in FELA cases still bears the burden of proving negligence, courts have held that only 'slight' or 'minimal' evidence is needed to raise a

---

* Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation.

jury question of negligence under FELA." *Mendoza v. Southern Pac. Transp. Co.*, 733 F.2d 631, 632 (9th Cir.1984) (internal citations omitted). Liability may be found where "employer negligence played any part, even the slightest, in producing the injury...." *Oglesby v. Southern Pac. Transp. Co.*, 6 F.3d 603, 607 (9th Cir.1993) (quoting *Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957)).

In *Mullahon v. Union Pac. R.R.*, 64 F.3d 1358 (9th Cir.1995), we held that the district court erred in granting summary judgment in favor of a railroad sued by the estate of an employee who was murdered by another employee. We held that a fact issue had been raised on the claim of direct negligence (as opposed to *respondeat superior*) liability, in light of evidence that a third employee had notice of the danger of the attack and was negligent in failing to warn his supervisor of the danger. *Id.* at 1360, 1362. "Under the theory of direct negligence, an employer is liable if it fails to prevent reasonably foreseeable danger to an employee from intentional or criminal misconduct." *Id.* at 1362 (quoting *Taylor v. Burlington Northern R.R.*, 787 F.2d 1309, 1314–15 (9th Cir.1986)). Noting that the FELA imposes liability on the employer for the negligence of its employees, regardless of rank, we held that summary judgment was improperly granted. *Id.* at 1362.

Mullahon, therefore, holds that a railroad can be held liable for negligence under the FELA in circumstances where one employee commits an intentional tort against another and responsibility for allowing the preexisting danger can be attributed to the employer. The district court correctly noted that certain facts distinguish *Mullahon* and the pending case, but in our view none of these factual distinctions are dispositive. In *Mullahon* there was evidence that the perpetrator had previous disputes with the victims before the murders. *Mullahon*, 64 F.3d at 1360. In the pending case Armstrong and Smith had an amicable relationship before the assault. The district court noted that "Smith did not have a history of violent or irrational behavior towards plaintiff," and concluded that Armstrong had failed to show that harm to him was reasonably foreseeable. However, we emphasized in *Mullahon* that the plaintiff need not always prove that injury to himself, as opposed to some other employee, was foreseeable.

"The test of foreseeability does not require that the negligent person should have been able to foresee the injury in the precise form in which it in fact occurred. Rather it is sufficient if the negligent person might reasonably have foreseen that *an* injury might occur." ... It is sufficient that a shooting with an assault rifle was foreseeable, not that the specific victim of the shooting was foreseeable.

*Id.* at 1364 (quoting *Green v. River Terminal Ry.*, 763 F.2d 805, 808 (6th Cir.1985)).

Given the minimal proof required to show negligence under the FELA, we conclude summary judgment against Armstrong was inappropriate. He offered evidence that: (1) prior to the assault on Armstrong, Smith had assaulted another coworker and threatened to shoot him, admitted to using illegal drugs and supplying them to coworkers, admitted to shooting or killing someone, and displayed a firearm while on duty; (2) Smith's conduct and statements were known to Burlington employees and supervisors; and (3) Smith's conduct was in violation of Burlington's own safety rules. We conclude that this evidence raises a fact issue on negligence. The evidence was also sufficient to raise a fact issue on causation. A negligence claim under the FELA requires the plaintiff to prove both negligence and causation. *Mullahon*, 64 F.3d at 1363. As in *Mullahon*, sufficient evidence was raised to allow a jury to decide whether the employer could have prevented the assault by watching the assailant more closely or terminating him before the assault occurred. *Id.* at 1364. Of course, we express no opinion as to how a jury, after hearing all the evidence and weighing the credibility of the witnesses, should decide these issues.

### B. *Course and Scope*

The FELA imposes liability on common carriers for injuries suffered by any person "while he is employed by such carrier." 45 U.S.C. § 51. The district court did not reach the issue of whether Armstrong's

injury occurred within the course of his employment, but we could affirm the summary judgment on this ground if the record raised no issue for Armstrong.

Burlington provided and paid for the motel accommodations where the assault occurred. While Armstrong was not required to stay at the Vineyard Inn, he could stay elsewhere only at his own expense.

At least three circuits have held that injuries to an employee occurring at employer-provided housing is within the scope of the FELA. *Empey v. Grand Trunk Western R.R.*, 869 F.2d 293, 295 (6th Cir.1989) (holding that "an employee who is injured while he avails himself of housing which his employer has provided and implicitly encouraged him to use is within the scope of his employment for the purposes of the FELA"); *Carney v. Pittsburgh & Lake Erie R.R.*, 316 F.2d 277, 279 (3d Cir.1963) (holding that since railroad "provided plaintiff with shelter and food, which by custom and the economic realities of the situation he and his work group were encouraged to use," his injury was within the scope of his employment); *Mostyn v. Delaware, L. & W.R. Co.*, 160 F.2d 15, 17–18 (2d Cir.1947) (L.Hand, J.) (holding that "when a railroad provides shelter or food or both for its employees, and they are using the accommodations so provided to prepare themselves for their work, or to rest and recuperate, they must be regarded as in its 'employ' ").

In these cases the employee was not required to stay at the employer-sponsored accommodations. As in the pending case, the employee in *Empey* was free to stay at another hotel, but only at his own expense. The court explained that such an arrangement "implicitly required" the employee to stay at the employer-sponsored accommodation, agreeing with the district court that "[i]t would violate the notions of fair play for the railroad to encourage its employees to lodge at a particular establishment and then escape liability for injuries suffered by its workers as a result of the poor quality of the facilities it encourages them to use." *Empey*, 869 F.2d at 295 (quoting district court's decision).

We agree with the analysis of these cases and conclude, at least on the record before us now, that Armstrong's injuries occurred within the scope of his employment under the FELA.

A factual distinction between the pending case and the cases from other circuits discussed above is that the injury in our case was allegedly caused by the intentional tort of a coworker, while in the other cases no intentional tort was alleged, and an alleged cause of the injury was the poor quality of the accommodations themselves. We do not believe that this factual distinction compels a different result in the pending case. As we read *Empey, Carney,* and *Mostyn,* they held that the provision of housing was sufficiently related to the employment to bring the claim within the scope of the FELA. The provision of housing here was equally related to the employment. If anything, the argument for holding the claim within the scope of the FELA is stronger in our case than in *Empey* and *Carney,* since in our case Armstrong seeks to impose liability on Burlington for its own negligence, while in *Empey* and *Carney* the plaintiffs sought to impute the negligence of the third party who provided the housing to the employer.

The summary judgment is reversed and the case is remanded to the district court for further proceedings.

REVERSED and REMANDED.