**Ray ROGERS, Plaintiff–Appellant,**

v.

**CHICAGO & NORTH WESTERN TRANSPORTATION COMPANY, Defendant–Appellee.**

**No. 89–3773.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 8, 1990.

Decided Nov. 14, 1991.

Rehearing and Rehearing In Banc Denied Dec. 17, 1991.

James P. Costello, Des Plaines, Ill. (argued), for plaintiff-appellant.

George H. Brant, Daniel R. LaFave (argued), Chicago & Northwestern Transp. Co., Chicago, Ill., for defendant-appellee.

Before POSNER and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

Ray Rogers appeals the district court's entry of summary judgment on his personal injury claim under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, in favor of the Chicago & North Western Transportation Company ("C & NW Railroad") on the ground that Rogers "was not acting within the scope of his employment for the railroad when injured." We affirm.

## I. FACTS

Rogers, forty-nine years of age, was employed by C & NW Railroad and was assigned to work as a rear brakeman on a train trip from Proviso, Illinois to Clinton, Iowa on June 6, 1987, the date of the accident. Upon arrival in Clinton, Rogers was released from duty and on off-duty layover status while awaiting a return trip to Proviso. While on layover, the plaintiff-appellant was on on-call status but was free to pursue his own interests on his free time until such time as he was re-called to duty. The C & NW Railroad provided sleeping accommodations for its personnel on layover in what Rogers described as a "company barracks."

After checking into a room, Rogers decided to go for a jog. Although the railroad made passes available to its employ-

ees at the Clinton YMCA, Rogers declined to use the YMCA running track facility as he felt it was in a state of un-repair and somewhat hazardous, and chose instead to run on the company's property. He chose a route that led him down an unfamiliar fire road where allegedly he stepped in a hole and injured his left knee. Rogers does not claim that the railroad offered the fire road, or any other portion of its property, for the purpose of recreational activities including jogging.

Rogers filed his complaint July 20, 1987, alleging that the C & NW Railroad was liable for his injury under the FELA, as he was acting within the scope of his employment in furtherance of interstate commerce while jogging, and the accident occurred because of the railroad's negligence in maintaining its real estate. The district court granted summary judgment in favor of the railroad, holding that "plaintiff was not acting within the scope of his employment in interstate commerce when he was injured." The issue presented for review is whether the district court erred in holding that the plaintiff-appellant's jogging in the instant case was not within the scope of Rogers' employment.

## II. DISCUSSION

The Federal Employer's Liability Act provides that

"Every common carrier by railroad while engaging in commerce between any of the several States ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

"Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter."

45 U.S.C. § 51. Rogers asserts that because the railroad requires its employees to pass a physical examination in order to retain their positions with the railroad [1] and actively encourages exercise on layovers by providing recreational passes to the YMCA, his jogging exercise was within the scope of his employment.

The district court relied upon a Fifth Circuit case, *Fowler v. Seaboard Coastline Railroad*, 638 F.2d 17 (5th Cir.1981), in determining that Rogers was not acting within the scope of his employment while jogging. In *Fowler*, the decedent was fatally injured while riding his motorcycle on railroad property during his lunch hour. The court denied recovery under FELA because "the motorcycle excursion was a purely private activity totally unrelated to the employment." *Id.* at 20. The district judge held "that plaintiff was not injured within the scope of his employment [because] as in *Fowler*, plaintiff was engaged in a 'purely private activity'—he was jogging for his own enjoyment and health." Mem.Op. at 3. Rogers argues that the district court erroneously ignored the distinction between his jogging and Fowler's motorcycle ride—that unlike Fowler's joyride, his jogging was related to employment because his employer requires that employees be able to pass a physical exam [2] and encourages physical activity during layovers through providing passes to the YMCA. This assertion is contradicted in the record, as the district judge addressed his contention, stating:

---

1. The railroad regulations cited for this proposition states *in toto*, "[e]mployees must pass the required examinations."

2. Rogers has failed to include any evidence pertaining to the importance or extent of the physical examinations much less how often they occurred in the course of his employment.

"Plaintiff contends that, because defendant encouraged its employees to be physically fit, [Rogers'] jogging was necessary and incidental to his employment and also furthered his employer's interest.... If plaintiff thought he was doing something which was necessary for or in the benefit of the railroad, this belief was not reasonable. Jogging benefits an employer in such an indirect and tangential way that plaintiff cannot be said to have been acting within the scope of employment."

*Id.* at 5. We agree.[3] Rogers admitted in his deposition testimony that the railroad does not require its employees to jog or to engage in any type of physical exercise. He has failed to present any evidence and thus has failed to convince us that physical exercise is a necessary prerequisite to passing the physical exam required of railroad employees.

Rogers argues that the district court erred in failing to analyze his claim that he was acting within the scope of his employment under the two-part tests variously articulated by other courts in FELA cases. But regardless of how individual federal courts have stated the tests, in order for an activity to qualify as being within the scope of employment, it must be a necessary incident of the day's work or be essential to the performance of the work. *See Wilson v. Chicago, M., St. P., & P.R.R.*, 841 F.2d 1347, 1355 (7th Cir.1988) ("Even if not required, an act [such as riding in a vehicle] could be within the scope of employment if it is 'a necessary incident of [the] day's work.'"); *Fowler v. Seaboard C.R.R.*, 638 F.2d 17, 20 (5th Cir.1981) (Eating lunch on company property is an activity "customarily engaged in by all employees working an eight-hour shift and is incidental to the employment ... [and] reasonably foreseen by the employer."); *Mostyn v. Delaware, L. & W.R.R.*, 160 F.2d 15, 17–18 (2nd Cir. 1947) (Eating and sleeping are essential to performing work, and in particular when employees on layover use accommodations provided by the employer for eating or sleeping, they are acting within the scope of their employment.).[4] Cases like *Mostyn* considered sleeping and eating at company facilities over layover to be necessary incidents of employment. Obviously, this is a reasonable perspective, since food and sleep certainly are essential to acceptable work performance. But "an act is not 'necessarily incident to' or 'an integral part of' employment when it is 'undertaken by an employee for a private purpose and having no causal relationship with his employment.'" *Wilson*, 841 F.2d at 1355 (citation omitted). Unlike the specific level of physi-

**3.** Even if we were to assume that Rogers' belief that he was benefitting the railroad in jogging was reasonable, we would still reject Rogers' claim that jogging on company property was within the scope of employment. The railroad provided exercise and jogging facilities at the YMCA, and absent objective evidence that the YMCA facilities were so dilapidated as to put the users thereof in danger of bodily harm, Rogers' subjective belief that it was safer to jog on an unfamiliar dirt road than a paved track is unpersuasive.

**4.** The appellant also directs our attention to § 229 of the Restatement (Second) of Agency (1957), which states: "To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized." Rogers has failed to note that Comment (c) limits the type of conduct within the scope of employment when acts of a personal nature are involved:

"Although the servant is authorized to act, the master is not liable for his conduct unless the servant is in fact acting in the employ-

ment and for his master's purposes. Getting ready to work or clearing away after work may be within the scope of employment. So, even such personal matters as eating and cleaning of the person may be so much a part of the work and under such control that it is part of the employment. This is true if the master assumes control over the general conduct of the servant during such period. If, however, such acts are for the personal convenience of the employees and are merely permitted by the master in order to make the employment more desirable, the acts are not within the scope of employment. As in other situations, the fact that the acts are done upon the master's premises or with his instrumentalities is important but not conclusive."

Since performing physical exercise while on layover is unrelated to the ability to perform the work required of railroad employees, a perk such as free passes to the YMCA must be considered as being provided "for the personal convenience of the employees ... merely permitted by the master in order to make the employment more desirable."

cal fitness required of certain law enforcement officers, such as those in the FBI, Secret Service, DEA and the U.S. Marshall Service (whose work assignments are much more stressful and physically demanding), in order to be able to perform their work, jogging has no direct relationship to his ability to perform this type of railroad work, nor is it a necessary incident of executing the duties of a rear brakeman (or if it is, Rogers has failed to inform us much less convince us). Even if the railroad requires its employees to be physically fit in order to pass physical examinations (*see supra* note 2), the regulation which states that "[e]mployees must pass the required examinations" fails to mandate a specified level of physical fitness that would require such strenuous exercise as jogging. Thus, it is immaterial that the district court did not analyze Rogers' claim under a two-part test, for we agree that "[e]xercising ... unlike eating and sleeping ... is not a 'necessary incident' to an employee's job duties." Mem.Op. at 4.[5]

Finally, Rogers asserts that the district court erred in deciding the question of whether jogging was reasonably incidental to his employment rather than submitting the issue to a jury as a disputed fact. He argues that under *Wilson v. Chicago, M., St. P., & P.R.R.*, the issue of whether an activity is within the scope of employment is a question to be reserved for the jury, and "that the only determination required in such a [summary judgment] proceeding is whether a reasonable jury could find for the [plaintiff] on the issue." In *Wilson* we held that in determining scope of employment under FELA, usual summary judgment standards apply. In order to avoid summary judgment, the plaintiff must demonstrate that there is "a genuine issue of material fact for the jury to determine."

*Wilson*, 841 F.2d at 1354. In *Wilson*, the trial court in deciding the summary judgment motion resolved "conflicting deposition testimony against Wilson." *Id.* at 1349. We reversed and remanded, ruling that there were genuine issues of fact as to whether Wilson's activity at the time of his injury (riding in a vehicle) was required by or benefitted the railroad. We held that it was for the jury to determine whether or not Wilson was engaged in performing an errand for the railroad at the time of the accident. Unlike Wilson, the facts surrounding Rogers' injury are undisputed. The only issue for the summary judgment motion was the legal effect of Rogers incurring an injury while running on railroad property (i.e., was he acting within the scope of his employment?). Thus, there was no error in the district court resolving this question of law on a summary judgment motion.

The C & NW Railroad neither instructed nor directed Rogers to jog, nor required him to maintain a level of physical fitness that necessitated as strenuous a type of exercise as jogging. Further, the railroad was not in control of Rogers' activities at the time of his injury, and he was not exercising in an area of the railroad property set aside for walking or jogging. Furthermore, the railroad had arranged for a safe place for running in the YMCA. Thus, based upon the totality of the evidence before us, we hold that Rogers was engaged in a personal recreational activity at the time of his accident. The judgment of the district court is

Affirmed.

---

5. Rogers argues that the running track the company provided for jogging at the YMCA was in such poor condition that he was fearful of being injured there. Hence, he was forced to find another place to exercise, so he chose to jog on company property. He asserts that since the railroad provided for jogging at the YMCA, but the facilities were too dangerous to use, his employer is responsible for any injury incurred while jogging at alternative facilities. Even

though this argument sounds interesting, it is immaterial, for as we have made clear earlier in the opinion, strenuous physical exercise of this nature while on layover has not been established in the record before us as a requirement of employment. Furthermore, if we followed Rogers' argument to its logical conclusion, if the company had no property, it would be liable for an injury incurred anywhere while jogging. That is not the law.