**Leslie DUNCAN, as Personal Representative for the decedent David Duncan, Plaintiff,**

v.

**UNION PACIFIC RAILROAD COMPANY, Defendant.**

**Union Pacific Railroad Company, Defendant/Third Party Plaintiff,**

v.

**Airport Inn, CFR, Inc., Third Party Defendant.**

No. 01–3070.

United States District Court, C.D. Illinois, Springfield Division.

March 20, 2002.

Grady E. Holley, Holley & Rosen, Springfield, IL, Mark Dupont, St. Louis, MO, for Plaintiff.

Thomas E. Jones, Thompson Coburn, Belleville, IL, James A. Borland, Quinn Johnston Henderson & Pretorius, Springfield, IL, for Defendant.

### ORDER

SCOTT, District Judge.

This matter comes before the Court on Defendant Union Pacific Railroad's (Union Pacific) Motion for Summary Judgment (d/e 15) and Defendant Union Pacific's Request for a Hearing on the Motion for Summary Judgment (d/e 17). The Court has determined that a hearing is not necessary in this case since the issues have been well briefed. Therefore, Union Pacific's request for a hearing is denied. Decedent David Duncan was not acting as Union Pacific's employee at the time the accident occurred; therefore, he is not entitled to recovery under the Federal Employers Liability Act (FELA). 45 U.S.C. Sec. 51. Union Pacific's Motion for Summary Judgment is therefore allowed.

### FACTS

Leslie Duncan is David Duncan's widow and is bringing this action as David Duncan's (Duncan) personal representative. At the time of his death, Duncan was employed as a welder in the Maintenance of Way Department of Union Pacific. In this job, Duncan worked as a member of Gang # 9114. This gang was responsible for maintaining and repairing Union Pacific's track, rails and adjoining structures. Duncan was employed as a member of a mobile gang, which meant that he was required to report to various locations for work, depending on where his gang was scheduled. Duncan's permanent home was in Lincoln, Illinois, but his geographical work area included Missouri, Arkansas, Louisiana, Kansas and Texas. Duncan's job consequently required him to travel and spend many nights away from home.

At the time Duncan was employed by Union Pacific, Union Pacific had a collective bargaining agreement with the Brotherhood of Maintenance of Way Employees. Ex. 4. As a Maintenance of Way employee, Duncan was subject to this agreement. This agreement provided that Maintenance of Way employees would receive a per diem for meals and lodging while working away from their permanent residence if meals and lodging were not provided by the railroad. The agreement did not state that employees had to stay at particular hotels or motels. Union Pacific did not provide Duncan with meals and lodging. Instead, it paid Duncan $37.00 each day in per diem expenses.

On Thursday, July 10, 1997, Duncan was working in Camden, Arkansas. His gang was working eight hour shifts, five days each week. Duncan was scheduled to work Monday through Friday of that week. While he worked in Camden, Arkansas, Duncan stayed at the Airport Inn near Camden. He checked in on July 8,

1997. Union Pacific did not select the Airport Inn as lodging, nor did it recommend that Duncan stay at the Airport Inn while in Camden. Duncan could have stayed at any lodging that he selected. Justin McGowan, the supervisor of Gang # 9114, stated that he knew that Duncan was staying at the Airport Inn but that he did not know why Duncan chose that particular motel. For several months prior to July 10th, Duncan had roomed with Javier Garcia, a welder's assistant on Gang # 9114. Duncan roomed with Garcia at the Airport Inn, beginning on July 8, 1997.

Garcia stated that on July 10, 1997, the gang got off work at about 3:30 p.m. Duncan and Garcia went back to the Airport Inn. Garcia also said that it was a very hot day so he went to the motel room to take a shower. Duncan told Garcia that he was going to the motel swimming pool. After taking a shower, Garcia went to the pool and found that Duncan had drowned. Duncan had previously told Garcia that he could not swim. Duncan's wife also indicated that he could not swim.

In her Complaint, Plaintiff alleges that at all times while Duncan stayed at the Airport Inn, the Airport Inn was Union Pacific's agent. Plaintiff contends that Duncan's injuries and death were caused by the negligent acts of Union Pacific and its agents because they:

(a) Failed to provide decedent with a reasonable safe place to work; or

(b) Failed to provide reasonably safe conditions for work; or

(c) Failed to furnish decedent with sufficient help; or

(d) Failed to properly protect its employees from the dangerous condition of the pool; or

(e) Failed to provide proper warnings of the dangerous condition of the pool; or

(f) Failed to provide decedent with a safe place to lodge in that the pool was defective and failed to meet industry standards or guidelines; or

(g) Failed to provide decedent with a safe place to lodge in that the pool was defective in that it failed to have a safety line, failed to have a rope dividing the deep and shallow ends, failed to properly mark the deep end of the pool, improperly marked the pool depths, failed to provide life saving equipment, failed to have clean water in its pool, contained an improper slope from the shallow to the deep end, failed to have adequate and safe surfaces on the pool bottom; or

(h) Failed to provide safe lodging for decedent.

Compl. ¶ 14.

## STANDARD OF REVIEW

At summary judgment, the moving party must present evidence which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must consider the evidence presented in the light most favorable to the non-moving party. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has produced evidence showing that he is entitled to summary judgment, the non-moving party must present evidence to show that issues of fact remain. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 576, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Union Pacific has demonstrated that there are no issues of material fact regarding Plaintiff's claim. Union Pacific has produced evidence demonstrating that Duncan was not acting within the scope of

his employment at the time he drowned. Plaintiff has not satisfied her burden to produce evidence showing that there are issues of fact remaining regarding whether Duncan was acting within the scope of his employment. Therefore, Union Pacific's Motion for Summary Judgment is allowed.

## ANALYSIS

The Federal Employers Liability Act (FELA) provides a broad remedial scheme for railroad employees injured by their employer's negligence. *Lisek v. Norfolk & Western Ry. Co.*, 30 F.3d 823, 831 (7th Cir.1994). FELA states that railroads operating in interstate commerce

> shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.

█ For Union Pacific to be held liable under FELA, Plaintiff must demonstrate that Duncan was acting within the scope of his employment when he drowned. *Rogers v. Chicago & NW Trans. Co.*, 947 F.2d 837, 838 (7th Cir.1991). The Court must apply common law principles, as determined by federal courts, to decide whether Duncan was acting within the scope of his employment. *Wilson v. Chicago, Milwaukee, St. Paul, & Pacific R. Co.*, 841 F.2d 1347, 1352 (7th Cir.1988). The Seventh Circuit has applied the Restatement Second of Agency, which states that "[t]o be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized [by the employer]."

*Rogers,* 947 F.2d at 840 (citing Restatement 2d of Agency § 229 (1957)).

█ When Duncan drowned, his work for the day had been completed, and he was engaged in a purely private activity by going to the swimming pool. There is no evidence that Duncan's going to the swimming pool was in any way authorized or incidental to conduct authorized by Union Pacific in the scope of Duncan's employment. It did not further the employer's needs. When an employee is engaged in a purely private activity that is not necessary or incidental to his employment duties, that employee is not acting within the scope of his employment. *Id.* at 838–39.

In her response to Union Pacific's Motion for Summary Judgment, Plaintiff cites several cases indicating that an employer may still be held liable under FELA for injuries occurring outside of a workplace's geographical location. However, in each of these cases, the employee was in some way required by the employer to stay at a particular lodging establishment. In *Empey v. Grand Trunk Western Railroad Co.*, 869 F.2d 293, 296 (6th Cir.1989), an employee was able to recover under FELA when he slipped and fell after water accumulated on the tile floor where he was staying. Although the employer did not require the plaintiff to stay at that particular lodging, it was the only lodging for which the employer would pay, and the employer was therefore liable. *Id.* at 295–96. The Court held that in those circumstances, the employer had implicitly required the plaintiff to stay at that establishment. *Id.* In *Carney v. Pittsburgh & Lake Erie R.R. Co.*, 316 F.2d 277, 282 (3d Cir.1963), an employee fell out of a negligently maintained bed and sued his employer under FELA. The employer was held liable because he had encouraged employees to stay at that particular establish-

ment. *Id.* Additionally, in *Mostyn v. Delaware L. & W.R. Co.*, 160 F.2d 15 (2d Cir.1947), an employer had contracted with an independent contractor for meals and lodging for employees. The employer was liable under FELA for injuries sustained while an employee was sleeping outside because the lodging conditions were so poorly maintained. *Id.* at 17–18.

Each of these cases is distinguishable from the situation at hand. The employers in *Empey, Carney,* and *Mostyn* provided the plaintiff-employees with lodging at a particular establishment, either implicitly or explicitly. The lodging establishment became the employer's agent, therefore. In Duncan's situation, Union Pacific did not recommend or require that employees stay in any particular hotel or motel. In fact, employees received their per diem amount no matter where they stayed. Duncan chose to stay at the Airport Inn when he worked in Camden, Arkansas. Other employees stayed elsewhere, or even in their vehicles, and received the per diem. Plaintiff has not demonstrated any evidence that Union Pacific recommended or required, implicitly or explicitly, that Duncan or other workers stay at this particular motel. Plaintiff has not provided any evidence supporting her claim that the Airport Inn acted as Union Pacific's agent.

These cases are also distinguishable from the situation at hand for another reason. Each case involved an activity performed by the employee that was essential to acceptable work performance. The Seventh Circuit has distinguished activities which are essential to acceptable work performance, such as eating and sleeping, from purely private activities. *Rogers,* 947 F.2d at 839–40. Going to the pool was neither incident to a day's work nor essential to acceptable work performance; it was a purely private activity. Swimming, or use of a swimming pool for

any other reason, had no direct relationship to Duncan's ability to perform his work as a welder maintaining tracks, rails, and adjoining structures for Union Pacific. Use of a swimming pool was also not a necessary incident of executing the duties of a welder.

Plaintiff also asserts that whether Duncan was acting within the scope of his employment is a question of fact that should be submitted to the jury. When there are no material facts at issue which could establish that Duncan was acting within the scope of his employment, however, summary judgment is appropriate. *Id.* at 840. Union Pacific has demonstrated that Airport Inn did not act on Union Pacific's behalf. Union Pacific did not recommend or require that Duncan stay at any particular lodging when he traveled for his job. Additionally, Union Pacific has demonstrated that Duncan's going to the swimming pool after work was a private activity that was not incidental to Duncan's employment. Although it is unclear exactly what happened to cause Duncan to drown, there is no issue of fact relating to whether Duncan was acting within the scope of his employment. All of the evidence demonstrates that Duncan was not acting within the scope of his employment. Therefore, summary judgment must be granted in favor of Union Pacific.

### CONCLUSION

For the reasons stated above, Union Pacific's request for a hearing on it's Motion for Summary Judgment (d/e 17) is DENIED. Union Pacific's Motion for Summary Judgment (d/e 15) is ALLOWED. This case is closed.

IT IS THEREFORE SO ORDERED.