776 N.W.2d 11 (2009)
279 Neb. 18
Glenn T. HOLSAPPLE, Jr., appellant,
v.
UNION PACIFIC RAILROAD COMPANY, a Delaware corporation, appellee.
No. S-09-152.
Supreme Court of Nebraska.
December 11, 2009.
*14 Christopher J. Moreland, Robert T. Dolan, and Robert E. Dolan, of Yaeger, Jungbauer & Barczak, P.L.C., Minneapolis, MN, and John J. Higgins, Omaha, for appellant.
John M. Walker and David J. Schmitt, of Lamson, Dugan & Murray, L.L.P., Omaha, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

NATURE OF CASE
Glenn T. Holsapple, Jr., brought this action under the Federal Employers' Liability Act (FELA) for a knee injury he allegedly sustained in the course of his employment. The injury occurred when Holsapple stepped into a hole while walking through an alleyway from a parking lot owned by Union Pacific Railroad Company (UP) to the UP yard office where he reported for work. The district court granted UP's motion for summary judgment, concluding that Holsapple's injury occurred outside the scope of his employment. Holsapple appealed. We transferred the appeal to our docket in accordance with our statutory authority to regulate caseloads of the appellate courts of this state.

BACKGROUND
The facts surrounding the sequence and location of Holsapple's injury are undisputed. Holsapple is employed by UP as a railroad conductor. He works on a rotating pool; when Holsapple's name reaches the top of the list, he is called into work. When Holsapple is called into work, he must report to the yard office to receive his paperwork and assignment. Holsapple's shift officially starts once he has reported to the yard office and has received his assignment.
On April 14, 2006, Holsapple was called into work and instructed to report to the Marysville, Kansas, yard office no later *15 than 10:30 p.m. Holsapple explained that it takes him approximately 5 minutes to drive from home to work and that he parks wherever he can find a parking spot. There are three parking lots and street parking available for UP employees. UP lets its employees decide where to park. The UP parking lots are not open to the public and are reserved solely for UP employees. Pictures in the record show that the lots are marked with signs stating, "Private Roadway No Trespassing Union Pacific R.R."
On the night Holsapple was injured, he parked in what he referred to as the "east lot." The east lot is owned by UP. The east lot is bisected by an alleyway that runs east to west and serves as both the entrance and exit driveway to the parking lot. The yard office is located on the west end of the alleyway. In order to get to the yard office from the east lot, employees must walk through either the parking lot or the alleyway and then cross the street on the west side of the lot.
The alleyway is owned by the city of Marysville as evidenced by a survey conducted by the vice president of a Marysville engineering and surveying company. UP was aware that its employees routinely traversed the alleyway to get from the east lot to the UP yard office. Additionally, UP has marked the alleyway as private property. Signs posted marking the alleyway state: "Private Roadway No Trespassing Union Pacific R.R." UP denies that it has control over the alleyway or that it has a responsibility to make sure the alleyway is safe for travel. Other than the signs marking the alleyway as a private roadway, there is no evidence in the record establishing that UP had an agreement with Marysville for its employees to use the alleyway or that UP had agreed to indemnify Marysville. It was, however, UP and not the city of Marysville that repaired the hole in the alleyway after the accident that caused Holsapple's injury.
Holsapple's injury occurred while he was walking from the east lot to the yard office to report for duty. Holsapple testified that he parked his car, exited the car, and started to walk through the alleyway toward the yard office. As he was walking through the alleyway, he stepped into a hole. Holsapple's injury occurred approximately 15 minutes before he was scheduled to report to the yard office.
Holsapple maintains that his injury occurred in the course and scope of his employment and that therefore, the FELA applies. Holsapple testified that he thought the injury occurred "on company property because it was a company parking lot." Holsapple also stated, "I was also on duty because I was going to work. The only reason I was there because I was going to work ...." UP maintains that Holsapple's injury occurred outside the course and scope of his employment and is thus not covered under the FELA. UP's argument is based on the fact that Holsapple had not picked up his paperwork from the yard office. UP maintains that this is when an employee's shift begins. UP also relies on the fact that Holsapple's injury occurred at 10:15 p.m., 15 minutes before he was required to report for duty.
Holsapple brought suit against UP under the FELA, alleging that he was injured while performing a duty necessarily incident to his employment. Holsapple further alleged that his injuries were caused, in whole or in part, by UP's negligence in violation of the FELA. The court granted UP's motion for summary judgment and dismissed Holsapple's cause of action under the FELA, concluding that Holsapple was not within the course and scope of his employment at the time of his injury. The court reasoned that Holsapple's *16 injury occurred before he was to report for duty and before he picked up his paperwork at the yard office. Additionally, the court noted that his injury occurred in the alleyway owned by the city of Marysville, not UP. The court also relied on the fact that Holsapple chose his means of transportation and where to park. Thus, the court concluded that Holsapple was not acting within the course and scope of his employment. Holsapple brought this appeal.

ASSIGNMENT OF ERROR
Holsapple argues the court erred in finding that he was not acting in the course and scope of his employment with UP at the time of his injury.

STANDARD OF REVIEW
Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[1]
In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[2]

ANALYSIS
As a preliminary matter, we will address the proper standard of review. The underlying facts surrounding how and when Holsapple's injury occurred are undisputed. As such, the only issue for the summary judgment motion was the legal effect of those facts. The question is whether under those facts, Holsapple was acting within the course and scope of employment for purposes of the FELA. We hold that this presents a question of law.[3]
This case presents the question of whether an employee is acting in the course and scope of employment while walking from a company parking lot and through public property on the way into work. This is an issue of first impression for our court. We have explained that under the FELA, railroad companies are liable in damages to any employee who suffers injury during the course of employment when such injury results in whole or in part due to the railroad's negligence.[4] To be entitled to the protection of the FELA, an injured employee must be acting within the scope of his or her employment at the time of the injury.[5] Scope of employment under the FELA is broadly construed by the federal courts[6] and has been interpreted to encompass acts incidental *17 to employment.[7] Course and scope of employment includes not only actual service, but also those things necessarily incident thereto, such as going to and from the place of employment.[8]
In determining whether an employee going to and from work is performing an act necessarily incident to the employment, cases from other jurisdictions distinguish "traversing" cases from "commuter" cases.[9] In traversing cases, courts have generally held that the employee is acting within the course and scope of employment.[10] In traversing cases, an employee (1) is exposed to risks not confronted by the general public[11] (2) as a result of his or her commute and (3) is injured within close proximity of his or her jobsite[12] (4) while attempting to return to or leave the jobsite[13] (5) within a reasonable time before or after the workday is over.[14] Employer liability in traversing cases does not depend on whether the employer owns or has control over the premises where the employee is injured.[15] Rather, an employee is acting within the course and scope of his or her employment if the employee is injured while traversing across premises which his or her employer has either explicitly or implicitly encouraged the employee to use when going to or returning from work.[16]
In commuter cases, courts generally conclude that the FELA does not provide coverage.[17] In commuter cases, (1) the employee is injured a significant distance from his or her jobsite and while commuting to or from the jobsite[18] and (2) the employee is not in any greater danger or exposed to any greater risks than any other member of the commuting public.[19] These courts hold that the FELA is not designed to protect workers from the risks of commuting to which all employees of any employer are exposed.[20]
*18 In rejecting Holsapple's argument that he was acting within the course and scope of his employment at the time of his injury, the district court relied on Sassaman v. Pennsylvania R. Co.,[21]Metropolitan Coal Company v. Johnson,[22] and Getty v. Boston and Maine Corporation.[23] The facts of those cases are distinguishable from the facts in the case at bar.
In Sassaman v. Pennsylvania R. Co.,[24] a railroad worker was injured when he stepped off one of his employer's trains, 9 miles from the jobsite, while returning home from work. The trains were open to the general public as a mode of transportation. The employee's injury occurred far away from his jobsite. Nevertheless, the injured employee insisted that the FELA applied because he was still on his employer's premises when he was injured. The court disagreed:
[T]he condition which makes possible a claim for injuries suffered as in the course of employment but which are actually received on premises away from the employee's place of employment is the fact that the employee must, of necessity, traverse such other premises in order to reach or depart from the place of the discharge of his duties.[25]
The court explained that the deciding fact was not whether the employee was injured on employer property. To illustrate, the court noted that if an employee is injured while on property adjacent to employer property, but his or her employer has knowledge and consents to the use of the adjacent property, then the employee is discharging a duty incident to his employment and the FELA would apply.[26] In Metropolitan Coal Company v. Johnson,[27] employing the rationale in Sassaman, the court held that an employee possessing a free pass and injured while commuting to work aboard an express train owned by his employer, but open to the public, was not within the scope of employment. The court reasoned that although the employee was on his employer's premises when injured, he was not on a part of the premises which was necessary for him to reach work. Further, the court stressed that while riding on the passenger train, the employee was not exposed to any greater hazards than any of the other passengers who were not employees.
The employee in Getty v. Boston and Maine Corporation[28] was likewise injured while riding a commuter train owned by his employer but open to the public. However, the employee in Getty tried to distinguish his case by arguing that recently fallen snow made any alternative mode of transportation to work impossible. In other words, the employee argued that he was compelled to ride his employer's train due to inclement weather and that therefore, the FELA applied. In rejecting this argument, the court reasoned that the employee's decision to use his employer's train to get to work did not stem directly from a specific requirement of his job or from a specific understanding between himself *19 and his employer regarding his mode of transportation.[29] In conclusion, the court stated, "We perceive no reason why he should receive favored treatment simply because he happened to be employed by the operator of the public conveyance."[30]
Unlike the facts of this case, all three of the aforementioned cases involve a situation where an employee is injured a great distance from his jobsite by means of one of his employer's passenger trains. We find the traversing cases more applicable to the facts of this case. For instance, in Erie R.R. Co. v. Winfield,[31] the U.S. Supreme Court applied the traversing rule where an employee was struck and killed by a switch engine shortly after he had put his engine away for the night and was crossing the carrier's yard on his way home. The Court held that in leaving the carrier's yard at the close of his day's work, the employee was engaged in a "necessary incident of his day's work" and was, thus, discharging a duty of his employment.[32]
Following this reasoning, the court in Morris v. Pennsylvania R. Co.[33] noted that the deceased employee was acting within the course and scope of his employment when killed on his employer's property shortly before he was to report for work.
In Caillouette v. Baltimore & Ohio Chicago Terminal R.,[34] the Seventh Circuit Court of Appeals held that a switchman employed by the railroad was within the course and scope of employment when he tripped over wires while crossing his employer's premises to report for duty. The court explained that the employee "had to, of necessity, cross some part of the worksite to reach the place where he was to report" to work.[35] Central to the court's conclusion that the employee was injured in the course and scope of his employment was the fact that he was injured in an area not open to the public and was thus subjected to dangers beyond those experienced by the general commuting public.[36]
In Carter v. Union Railroad Company,[37] a Union Railroad Company (Union Railroad) employee was injured on his way into work while traversing property owned by another corporation. Union Railroad was aware that its employees routinely traversed this property. The property owner had, in fact, entered into an agreement with Union Railroad whereby Union Railroad was given permission for its employees to traverse the property in exchange for Union Railroad's agreement to indemnify the property owner. Union Railroad did not, however, have any authority or control over the property. Nor did it bear any responsibility for maintaining the property. In concluding that the FELA applied, the court said: "While the parking lot used and the property crossed by [the employee] belonged to [another], the use thereof by railroad employees was within the expectations and intentions of the railroad. [Union Railroad] went to great lengths to make the parking lot *20 available to its employees."[38] The court went on to conclude that the FELA imposes a nondelegable duty to use reasonable care to furnish a safe place to work.[39] Further, the court held that this duty extends beyond the employer's premises to property which employees are encouraged or required to use and which a third person, rather than the employer, has a primary obligation to maintain.[40]
Although no Nebraska decision has considered whether an employee is acting within the course and scope of employment for purposes of applying the FELA, we have considered whether an employee is acting within the course and scope of employment for workers' compensation purposes. In La Croix v. Omaha Public Schools,[41] the plaintiff was encouraged by her employer to park in a parking lot not owned by the employer and to use a shuttle service supplied by the employer to get to her work premises. While on her way to board the shuttle bus, the plaintiff fell in the parking lot and was injured. We held that by encouraging employees to park in the lot and providing transportation to the workplace from the lot, the employer created a condition under which its employees would necessarily encounter hazards while traveling to the premises where they work. We concluded that there was a distinct and causal connection between the employer's sponsoring of the parking lot and the plaintiff's injury. Because of this causal connection, we concluded the plaintiff's injury arose out of and in the course of her employment.
In a case arising under the Utah Workmen's Compensation Act, the court in Bountiful Brick Co. v. Giles[42] provided a useful discussion of the scope of employment. The court stated:
[E]mployment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance.[43]
Although Bountiful Brick Co. was decided under Utah's workers' compensation laws, it has been cited with approval by several other courts in the FELA context and is instructive.[44]
We conclude that Holsapple was injured while in the course and scope of his employment. At the time of his injury, Holsapple was within close proximity to the yard office. His injury occurred while he was on his way to report for duty and occurred shortly before he was scheduled to report for duty. It was a necessary incident of the workday for Holsapple to walk from his car to the yard office to report for duty.
*21 In walking from his car to report for duty, Holsapple was exposed to dangers and risks not shared by the general public. The alleyway was not open to the general public. UP strategically placed signs restricting the use of the alleyway to UP employees. Further, UP was fully aware that its employees routinely traversed the alleyway to and from the east lot. Not only was UP fully aware that its employees routinely traversed the alleyway, but UP has restricted the access to the alleyway to UP employees as evidenced by the signs. And in doing so, UP has effectively encouraged its employees to use the alleyway. There is a distinct causal connection between UP's encouraging its employees to traverse the alleyway and Holsapple's injury. As already discussed, where an employer knows and implicitly encourages its employees to traverse another's property nearby to get to and from the jobsite, that employer cannot avoid liability under the FELA simply by reason of the fact that it does not own the property. For these reasons, we conclude that the district court should not have granted summary judgment in favor of UP.

CONCLUSION
Based on the facts of this case, we conclude that the principles set forth in the commuter cases are not applicable. Rather, we conclude that the facts of this case fit within the traversing line of cases and that therefore, Holsapple's injury occurred within the course and scope of his employment for purposes of the FELA. As such, UP was not entitled to judgment as a matter of law. We reverse the summary judgment entered in UP's favor and remand the cause for further proceedings.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] McNeel v. Union Pacific RR. Co., 276 Neb. 143, 753 N.W.2d 321 (2008).
[2] Id.
[3] See, Rogers v. Chicago & North Western Transp. Co., 947 F.2d 837 (7th Cir.1991); Hoover v. Burlington Northern RR. Co., 251 Neb. 689, 559 N.W.2d 729 (1997). See, also, Keovorabouth v. Industrial Com'm, 222 Ariz. 378, 214 P.3d 1019 (Ariz.App.2009); La Croix v. Omaha Public Schools, 254 Neb. 1014, 582 N.W.2d 283 (1998).
[4] McNeel v. Union Pacific RR. Co., supra note 1.
[5] Wilson v. Chicago, Milwaukee, St. Paul, & Pac. R., 841 F.2d 1347 (7th Cir.1988); Moore v. Chesapeake & O. Ry. Co., 649 F.2d 1004 (4th Cir.1981); Betoney v. Union Pacific R. Co., 701 P.2d 62 (Colo.App.1984). See 45 U.S.C. § 51 et seq. (2006).
[6] Erie R.R. Co. v. Winfield, 244 U.S. 170, 37 S.Ct. 556, 61 L.Ed. 1057 (1917); Ponce v. Northeast Illinois Regional Commuter R.R., 103 F.Supp.2d 1051 (N.D.Ill.2000).
[7] Erie R.R. Co. v. Winfield, supra note 6; Schneider v. National R.R. Passenger Corp., 854 F.2d 14 (2d Cir.1988); Sassaman v. Pennsylvania R. Co., 144 F.2d 950 (3d Cir.1944); Ponce v. Northeast Illinois Regional Commuter R.R. Corp., supra note 6. See Cudahy Co. v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366 (1923).
[8] See, Erie R.R. Co. v. Winfield, supra note 6; Virginian Ry. Co. v. Early, 130 F.2d 548 (4th Cir.1942).
[9] Caillouette v. Baltimore & Ohio Chicago Terminal R., 705 F.2d 243 (7th Cir.1983).
[10] See Ponce v. Northeast Illinois Regional Commuter R.R., supra note 6.
[11] See Caillouette v. Baltimore & Ohio Chicago Terminal R., supra note 9.
[12] See Carter v. Union Railroad Company, 438 F.2d 208 (3d Cir.1971).
[13] See Erie R.R. Co. v. Winfield, supra note 6.
[14] See Carter v. Union Railroad Company, supra note 12.
[15] See, Shenker v. Baltimore & Ohio R. Co., 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963); Kooker v. Pittsburgh & Lake Erie Railroad Co., 258 F.2d 876 (6th Cir.1958); Chicago Great Western Railway Company v. Casura, 234 F.2d 441 (8th Cir. 1956).
[16] See Empey v. Grand Trunk Western R. Co., 869 F.2d 293 (6th Cir. 1989). See, also, Bountiful Brick Co. v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507 (1928); Carter v. Union Railroad Company, supra note 12.
[17] Caillouette v. Baltimore & Ohio Chicago Terminal R., supra note 9.
[18] See Schneider v. National R.R. Passenger Corp., supra note 7.
[19] Caillouette v. Baltimore & Ohio Chicago Terminal R., supra note 9.
[20] See, Ponce v. Northeast Illinois Regional Commuter R.R., supra note 6; Caillouette v. Baltimore & Ohio Chicago Terminal R., supra note 9.
[21] Sassaman v. Pennsylvania R. Co., supra, note 7.
[22] Metropolitan Coal Company v. Johnson, 265 F.2d 173 (1st Cir.1959).
[23] Getty v. Boston and Maine Corporation, 505 F.2d 1226 (1st Cir.1974).
[24] Sassaman v. Pennsylvania R. Co., supra note 7.
[25] Id. at 953.
[26] Sassaman v. Pennsylvania R. Co., supra note 7.
[27] Metropolitan Coal Company v. Johnson, supra note 22.
[28] Getty v. Boston and Maine Corporation, supra note 23.
[29] Id.
[30] Id. at 1228.
[31] Erie R.R. Co. v. Winfield, supra note 6.
[32] Id., 244 U.S. at 173, 37 S.Ct. 556.
[33] Morris v. Pennsylvania R. Co., 187 F.2d 837 (2d Cir.1951).
[34] Caillouette v. Baltimore & Ohio Chicago Terminal R., supra note 9.
[35] Id. at 246.
[36] Id.
[37] Carter v. Union Railroad Company, supra note 12.
[38] Id. at 210.
[39] Id.
[40] Carter v. Union Railroad Company, supra note 12.
[41] La Croix v. Omaha Public Schools, supra note 3.
[42] Bountiful Brick Co. v. Giles, supra note 16.
[43] Id., 276 U.S. at 158, 48 S.Ct. 221.
[44] See Caillouette v. Baltimore & Ohio Chicago Terminal R., supra note 9.