*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1369**

State of Minnesota,
Respondent,

vs.

Earvin Ainwin Wright,
Appellant.

**Filed July 21, 2014
Affirmed
Johnson, Judge**

Hennepin County District Court
File No. 27-CR-12-36486

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Johnson, Presiding Judge; Rodenberg, Judge; and

Chutich, Judge.

## UNPUBLISHED OPINION

**JOHNSON**, Judge

A Hennepin County jury found Earvin Ainwin Wright guilty of felony domestic assault based on an altercation with a former girlfriend. On appeal, Wright argues that the district court committed multiple errors during the trial. We affirm.

## FACTS

Wright and his former girlfriend, H.T., have a two-year-old son together. On November 1, 2012, Wright and H.T. spent the day together. At approximately 9:00 p.m., H.T. drove Wright in her car to a house in Richfield. When they arrived, two of Wright's friends got into H.T.'s car. After H.T. refused to drive Wright's friends to St. Paul, Wright became angry and yelled at her. H.T. testified that she was scared because Wright had been drinking, saying, "I didn't want him to hit me."

H.T. exited the vehicle and started walking away down the street. Wright followed her and told her to get back in the car. When H.T. refused, Wright grabbed her by the arms and turned her around, and they both fell to the ground. H.T. testified that she felt nervous but eventually got back in the car with Wright. Wright and H.T. argued in the car further before H.T. exited the car again and walked toward a motel that was less than one block away. Wright told H.T. to get back in the car, chased after her, and threatened to beat her up.

When H.T. reached the motel, she found that the door was locked. She yelled and beat on the glass, asking the motel employees to let her in, which they did. Wright followed H.T. into the motel lobby, threatened her, and attempted to hit her but was

stopped by motel employees.  Wright fled from the motel.  A motel security guard chased Wright down the street and saw him jump on the hood of H.T.'s car and smash her windshield.

The state charged Wright with felony domestic assault, in violation of Minn. Stat. § 609.2242, subd. 4 (2012).  The case was tried to a jury in February 2013.  The jury returned a verdict of guilty.  In April 2013, the district court sentenced Wright to 28 months of imprisonment.  Wright appeals.

## D E C I S I O N

### I.  Impeachment Evidence

Wright first argues that the district court erred by allowing the state to introduce, for purposes of impeachment, evidence of his prior felony convictions of domestic assault in 2011, terroristic threats in 2010, and terroristic threats in 2003.

Evidence of a defendant's prior conviction is admissible for impeachment purposes if the crime is punishable by more than one year in prison and the probative value outweighs its prejudicial effect.  Minn. R. Evid. 609(a); *State v. Williams*, 771 N.W.2d 514, 518 (Minn. 2009).  In this case, each of Wright's three prior convictions was punishable by more than one year of incarceration.  *See* Minn. Stat. § 609.2242, subd. 4; Minn. Stat. § 609.713, subd. 1 (2012).  Thus, we must determine whether the probative value of the evidence of those convictions outweighs its prejudicial effect.  That determination depends on the five *Jones* factors: "'(1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime . . . , (4) the importance of the

defendant's testimony, and (5) the centrality of the credibility issue.'" *State v. Hill*, 801 N.W.2d 646, 653 (Minn. 2011) (alteration in original) (quoting *State v. Jones*, 271 N.W.2d 534, 538 (Minn. 1978)). We apply an abuse-of-discretion standard of review. *Hill*, 801 N.W.2d at 651.

## A.     Impeachment Value

The district court determined that the first *Jones* factor weighs slightly in favor of admission. The district court stated that Wright's prior convictions have "some impeachment value" because all are felonies but recognized that the impeachment value was "considerably less than something involving dishonesty or false statement[s]." Wright contends that the impeachment value is minimal because the prior convictions do not directly involve dishonesty or false statements. His contention is not inconsistent with the district court's reasoning that this factor weighs slightly in favor of admission.

In any event, the district court's reasons do not reveal an abuse of discretion. The supreme court has stated that "*any* felony conviction is probative of a witness's credibility, and the mere fact that a witness is a convicted felon holds impeachment value." *Id.* at 652. In addition, "it is the general lack of respect for the law, rather than the specific nature of the conviction, that informs the fact-finder about a witness's credibility, at least with respect to convictions other than those involving dishonesty or false statements." *Id.* Furthermore, "a prior conviction can have impeachment value by helping the jury see the 'whole person' of the defendant and better evaluate his or her truthfulness." *State v. Swanson*, 707 N.W.2d 645, 655 (Minn. 2006). Thus, the district

4

court did not abuse its discretion by concluding that this factor weighs slightly in favor of admission.

**B.      Dates of Prior Convictions and Defendant's Subsequent History**

The district court determined that the second *Jones* factor weighs in favor of admission. Wright concedes that the district court did not err with respect to the second factor.

**C.      Similarity to Crime Charged**

The district court determined that the third *Jones* factor weighs in favor of admission. The district court recognized that Wright's three prior convictions are "very similar to some degree with the charged offense" and that this similarity ordinarily would weigh against admissibility. The district court noted, however, that because evidence of the incidents underlying two of the prior convictions (the 2011 domestic-assault conviction and the 2010 terroristic-threats conviction) would be admissible as prior acts of domestic assault pursuant to section 634.20 of the Minnesota Statutes, the evidence of the conviction did not greatly increase the risk of unfair prejudice to Wright. The district court further noted that because the 2003 conviction is the same type of crime as the 2010 conviction, there would be no reason to exclude the 2003 conviction.

The principle underlying the district court's reasoning has been recognized by this court with respect to other types of evidence. *See VanHercke v. Eastvold*, 405 N.W.2d 902, 906 (Minn. App. 1987) (admission of photographs showing beer cans near vehicle was not unduly prejudicial because jury had already heard evidence to that effect). Furthermore, even if this factor does not weigh in favor of admissibility, a district court

5

does not abuse its discretion by admitting evidence of prior convictions for impeachment purposes if the other four *Jones* factors weigh in favor of admission. *Swanson*, 707 N.W.2d at 656.

**D.     Importance of Defendant's Testimony and Centrality of Credibility**

The district court determined that the fourth and fifth *Jones* factors weigh in favor of admissibility. The district court reasoned that Wright's testimony is the "only vehicle . . . for presenting his point of view and therefore credibility is central." Wright contends that these factors do not weigh in favor of admissibility because the district court's ruling caused him not to testify and because his testimony was important.

"[A] judge might exclude even a relevant prior conviction if he determines that its admission for impeachment purposes will cause [a] defendant not to testify and if it is more important in the case to have the jury hear the defendant's version of the case." *State v. Bettin*, 295 N.W.2d 542, 546 (Minn. 1980). But "[i]f credibility is a central issue in the case, the fourth and fifth *Jones* factors weigh in favor of admission of the prior convictions." *Swanson*, 707 N.W.2d at 655.

In this case, if Wright would have testified, his credibility would have been a central issue in the case such that the impeachment evidence would have been important. Thus, the district court did not abuse its discretion by concluding that the fourth and fifth *Jones* factors weigh in favor of admission.

In sum, the district court carefully balanced the potential probative value and prejudicial effect of admitting evidence of Wright's prior felony convictions for

6

impeachment purposes under Minn. R. Evid. 609(a). The district court did not abuse its discretion in doing so.

## II. Relationship Evidence

Wright next argues that the district court erred by allowing the state to introduce evidence of his prior acts of domestic abuse against a different former girlfriend, H.M., pursuant to section 634.20 of the Minnesota Statutes. We apply an abuse-of-discretion standard of review to a district court's ruling on the admissibility of relationship evidence pursuant to section 634.20. *State v. Lindsey*, 755 N.W.2d 752, 755 (Minn. App. 2008), *review denied* (Minn. Oct. 29, 2008).

H.M. had been in a romantic relationship with Wright that ended approximately one month before the prior act of abuse. At trial, H.M. testified that, in December 2009, Wright called her in the middle of the night, yelled at her, and demanded to know where she was. She told him that she did not need to tell him where she was because she no longer was his girlfriend. Wright responded, "Okay, I'm going to show you. I've got something for you." The next day, someone threw a brick through the window of her mother's apartment. H.M. testified that Wright later said that he had thrown the brick through the window.

The relevant statute provides, in pertinent part:

> Evidence of similar conduct by the accused against the victim of domestic abuse, or against other family or household members, is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Minn. Stat. § 634.20 (2012). Such evidence of "similar conduct" is commonly referred to as "relationship evidence." *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010). "Domestic abuse" includes "physical harm, bodily injury, or assault; the infliction of fear of imminent physical harm, bodily injury, or assault; or terroristic threats" committed against a "family or household member by a family or household member." Minn. Stat. § 518B.01, subd. 2(a) (2012). A family or household member includes

> (1)    spouses and former spouses;
>
> (2)    parents and children;
>
> (3)    persons related by blood;
>
> (4)    persons who are presently residing together or who have resided together in the past;
>
> (5)    persons who have a child in common regardless of whether they have been married or have lived together at any time;
>
> (6)    a man and woman if the woman is pregnant and the man is alleged to be the father, regardless of whether they have been married or have lived together at any time; and
>
> (7)    persons involved in a significant romantic or sexual relationship.

*Id.*, subd. 2(b).

In *State v. McCoy*, 682 N.W.2d 153 (Minn. 2004), the supreme court "expressly adopt[ed] Minn. Stat. § 634.20 as a rule of evidence for the admission of evidence of similar conduct by the accused against the alleged victim of domestic abuse." *Id.* at 161. Six years later, in *State v. Valentine*, 787 N.W.2d 630 (Minn. App. 2010), *review denied* (Minn. Nov. 16, 2010), this court upheld a district court's admission of evidence that a

8

defendant had assaulted his "other girlfriend," who was not the complainant in that case, because she met the definition of "other family or household member[]" under section 518B.01. *Id.* at 636, 638 (quotation omitted); *see also* Minn. Stat. § 518B.01, subd. 2(b)(7). We also have held that "family or household members" includes persons who previously were involved in a romantic or sexual relationship with the accused. *Sperle v. Orth*, 763 N.W.2d 670, 674 (Minn. App. 2009) (affirming issuance of order for protection).

In arguing that the district court erred, Wright does not attempt to distinguish *Valentine*. Instead, he asserts that the supreme court "has not amended the Rules of Evidence to extend the Court's holding in *McCoy* to evidence of prior acts against persons other than the alleged victim" and suggests that *Valentine* is not "binding upon the lower courts." Contrary to Wright's argument, both the district court and this court are bound by *Valentine*. *See Doe v. Lutheran High Sch. of Greater Minneapolis*, 702 N.W.2d 322, 330 (Minn. App. 2005), *review denied* (Minn. Oct. 26, 2005). Furthermore, we see no reason why *Valentine* does not support the district court's ruling in this case.

Wright also contends that, even if his prior acts of domestic abuse against H.M. are within the scope of section 634.20, the district court should have excluded her testimony because it was "unfairly prejudicial and too general to bear probative value." *See* Minn. Stat. § 634.20. Contrary to Wright's argument, the legislature has determined that the probative value of such evidence is high because "evidence showing how a defendant treats his family or household members, such as his former spouses or other girlfriends, sheds light on how the defendant interacts with those close to him, which in

9

turn suggests how the defendant may interact with the victim." *Valentine*, 787 N.W.2d at 637. In addition, the danger of unfair prejudice in this case was low because the district court gave a cautionary instruction to the jury. *Lindsey*, 755 N.W.2d at 757. Accordingly, the probative value of Wright's prior acts of domestic abuse against H.M. is not substantially outweighed by the danger of unfair prejudice.

Thus, the district court did not err by admitting the state's evidence of Wright's prior acts of domestic abuse against a different former girlfriend, H.M., pursuant to section 634.20 of the Minnesota Statutes.

### III. Motion for Mistrial

Wright next argues that the district court erred by denying his motion for a mistrial after the prosecutor improperly elicited inadmissible testimony from H.T.

At a pre-trial hearing, the district court ruled that the state was permitted to introduce testimony from H.T. regarding a prior act of abuse from 2011. During direct examination, the state elicited testimony from H.T. about prior acts of abuse other than the act that occurred in 2011. Specifically, the state elicited testimony regarding an incident in 2009 in which Wright dragged H.T. across a parking lot by her hair.

After the state's case-in-chief, Wright moved for a mistrial on the ground that the state did not obtain a pretrial ruling on the admissibility of the 2009 incident pursuant to section 634.20. The district court denied Wright's motion. The district court recognized that the state did not give the district court an opportunity to rule on the admissibility of the evidence under section 634.20 before it was elicited from H.T. but nonetheless concluded that a mistrial was not warranted. The district court reasoned that the evidence

10

"would have been admissible" as relationship evidence and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The district court further noted that "given the other references in this trial that were proper" and the fact that the court gave a cautionary instruction, "I don't think [H.T.'s additional testimony] prejudiced him any further."

"[A] mistrial should not be granted unless there is a reasonable probability that the outcome of the trial would be different if the event that prompted the motion had not occurred." *State v. Manthey*, 711 N.W.2d 498, 506 (Minn. 2006) (alteration in original) (quotation omitted). This court applies an abuse-of-discretion standard of review to a district court's denial of a motion for a mistrial. *Id.*

The district court correctly reasoned that H.T.'s testimony about the 2009 incident would have been admissible under section 634.20 as relationship evidence. *See* Minn. Stat. § 634.20. In addition, the district court reasonably determined that whatever prejudice was created by H.T.'s testimony about the 2009 incident "was not so fundamental or egregious as to require a mistrial and was effectively mitigated by the court's instructions." *See Manthey*, 711 N.W.2d at 506. Thus, the district court did not abuse its discretion by denying Wright's motion for a mistrial.

### IV. Evidence of Property Damage

Wright next argues that the district court erred by admitting evidence that he damaged H.T.'s car after he left the motel. This court applies an abuse-of-discretion standard of review to a district court's evidentiary rulings. *State v. Riddley*, 776 N.W.2d

11

419, 424 (Minn. 2009). "A defendant appealing the admission of evidence has the burden to show the admission was both erroneous and prejudicial." *Id.*

As a general rule, evidence connecting a defendant with other crimes or bad acts for which he is not on trial is inadmissible. *State v. Spreigl*, 272 Minn. 488, 490, 139 N.W.2d 167, 169 (1965). If such evidence is to be admitted, certain procedural safeguards must be taken: the state must, among other things, give notice of its intent to offer the evidence and prove the defendant's participation in the other crime or bad act by clear and convincing evidence. *See* Minn. R. Evid. 404(b). Notwithstanding this general rule, immediate-episode evidence is admissible as an exception to the *Spreigl* rule and the requirements of rule 404(b). *Riddley*, 776 N.W.2d at 424-25. Under this exception, "[t]he state may prove all relevant facts and circumstances which tend to establish any of the elements of the offense with which the accused is charged, even though such facts and circumstances may prove or tend to prove that the defendant committed other crimes." *State v. Wofford*, 262 Minn. 112, 118, 114 N.W.2d 267, 271 (1962). "[W]here two or more offenses are linked together in point of time or circumstances so that one cannot be fully shown without proving the other, or where evidence of other crimes constitutes part of the res gestae, it is admissible." *Id.* Applying *Wofford,* the supreme court has affirmed the admission of immediate-episode evidence if there is a close causal and temporal connection between the prior bad act and the charged crime. *Riddley*, 776 N.W.2d at 425.

In this case, there is a close connection between the charged offense and the challenged evidence because the assault and the damage to the car took place within

minutes of each other in essentially the same location. In addition, the challenged evidence is relevant because it tends to refute Wright's theory of the defense. In closing arguments, Wright's trial counsel argued that H.T. was "lying [about the incident] or kind of blew it up in her mind"; that there is no evidence that H.T. was "afraid"; and that Wright never attempted to strike H.T. when he chased her into the motel. The challenged evidence is therefore admissible under the immediate-episode exception. *See Wofford*, 262 Minn. at 118, 114 N.W.2d at 271. Thus, the district court did not abuse its discretion by admitting the testimony into evidence.

## V. Victim's Mental Health

Wright last argues that the district court erred by denying his motion to compel discovery of H.T.'s mental-health records and by denying his request to cross-examine H.T. about her mental health. Wright first raised the issue in a pre-trial motion, which sought discovery of H.T.'s mental-health records. The district court denied Wright's motion, without an *in camera* review of the records. At trial, Wright sought to question H.T. about her mental health on cross-examination, but the district court would not allow it.

### A.      Mental-Health Records

A crime victim's medical records generally are protected from disclosure by the physician-patient privilege. Minn. Stat. § 595.02, subd. 1(d), (g) (2012). But "the medical privilege, like other privileges, sometimes must give way to the defendant's right to confront his accusers." *State v. Kutchara*, 350 N.W.2d 924, 926 (Minn. 1984). "[T]he proper procedure is generally for the trial court to review the medical records at issue in

13

camera to determine whether the privilege must give way." *State v. Reese*, 692 N.W.2d 736, 742 (Minn. 2005). "'The in camera approach strikes a fairer balance between the interest of the privilege holder in having his confidences kept and the interest of the criminal defendant in obtaining all relevant evidence.'" *State v. Hummel*, 483 N.W.2d 68, 72 (Minn. 1992) (quoting *State v. Paradee*, 403 N.W.2d 640, 642 (Minn. 1987)); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 60, 107 S. Ct. 989, 1002-03 (1987). Nonetheless, before granting a motion for an *in camera* review of privileged information, a defendant must make some "plausible showing" that the information sought is "material and favorable to his defense." *Hummel*, 483 N.W.2d at 72 (quotation omitted).

In this case, Wright asserted the following basis for his motion to compel:

> The defense has learned that [H.T.] has a Social Security disability for mental health issues, including but not limited to depression and panic attacks, and takes several medications, including Zoloft. As a result, it is possible that her perception of what happened in this case was affected by her mental health issues, which, if true, would be relevant to the defense in this case.

The district court, citing *Hummel*, reasoned that Wright had not made a "'plausible showing' that [H.T.'s] mental condition or her use of Zoloft impairs her ability to perceive and tell the truth." The district court further reasoned, "The motion contains no information that the victim hallucinates, is disposed to lie, or suffers from psychosis or another serious mental illness likely to affect her ability to perceive. Nor does it contain information that suggests that such information might be contained in the victim's medical records."

The reasons stated by the district court reflect a proper exercise of discretion. In *Hummel*, the supreme court held that the defendant's showing was insufficient to trigger the need for *in camera* review. 483 N.W.2d at 72. The supreme court reasoned as follows:

> [The petitioner's] motion and brief gave the trial court no theories on how the file could be related to the defense or why the file was reasonably likely to contain information related to the case. Petitioner cannot complain that he was denied notice of the requirement that he show some connection between the file and his case. The *Ritchie* Court's analysis, which we adopted in *Paradee*, makes it absolutely clear that *some* showing is required before *in camera* review is granted. *Ritchie*, 480 U.S. at 58 n.15, 107 S. Ct. at 1002 n.15. Petitioner made *no* showing to the trial court, which is deficient under any applicable standard. Contrary to petitioner's position, having the trial court review confidential material is not a right. It is a discovery option, but only after certain prerequisites are satisfied. In this case, they were not.

*Hummel*, 483 N.W.2d at 72. In this case, the district court properly applied the reasoning of *Hummel* to the circumstances of this case. Thus, the district court did not abuse its discretion by denying Wright's motion to discover H.T.'s mental-health records without first conducting an *in camera* review.

## B. Cross-Examination

A district court has broad discretion in evidentiary matters related to cross-examination, but "the Confrontation Clause operates as a limit on that discretion." *State v. Evans*, 756 N.W.2d 854, 871 (Minn. 2008); *see also State v. Tran*, 712 N.W.2d 540, 550-51 (Minn. 2006)). "The constitutional right of confrontation 'guarantees only an opportunity for cross-examination, not cross-examination that is effective in whatever

way, and to whatever extent, the defense might wish.'" *Evans*, 756 N.W.2d at 874 (quoting *Tran*, 712 N.W.2d at 551).

Wright contends that the district court erred by limiting his cross-examination of H.T. because he "had a good faith basis for believing that [H.T.'s] ability to perceive events was affected by her mental illness." But Wright did not assert at trial, and does not explain on appeal, how H.T.'s mental illness might affect her ability to accurately perceive events. In denying Wright's request to cross-examine H.T. about her mental health, the district court provided the following reasons:

> What you describe is information that would be ordinarily privileged in any other circumstance and is also general evidence of character. The three things that were relied on in the motion to obtain the records and that I assume were relied upon here, are the defense's belief that she suffers from depression, panic attacks and take[s] Zoloft as a result.
>
> I don't believe those are specific enough conditions to allow an inquiry because none of those prove or even suggest that she cannot perceive reality or tell the truth about it, or that she's otherwise impaired as a witness. If I thought otherwise, I probably would have allowed discovery of it but I think it would mislead the jury to allow cross-examination with it.

The reasons stated by the district court reflect a proper exercise of discretion. Thus, the district court did not abuse its discretion by limiting Wright's ability to cross-examine H.T.

**Affirmed.**

16